**MID–AMERICA ENERGY RESOURCES, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

Tax Court of Indiana.

May 22, 1997.

B. Keith Shake, Henderson, Daily, Withrow & Devoe, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for respondent.

FISHER, J.

Mid–America Energy Resources ("MAER") challenges the Department of Revenue's ("Department") finding that they do not qualify for the equipment and consumption exemptions as producers of chilled water used to condition air. MAER asserts that its chilling process produces "other tangible personal property" while the Department claims that MAER provides a service. The central issue before this Court is whether MAER's chilling of water consti-

tutes "direct production" of "other tangible personal property" for purposes of the industrial exemptions.

### FACTS

The parties do not dispute the material facts. MAER is an Indiana corporation providing air conditioning to downtown Indianapolis businesses, such as the RCA (Hoosier) Dome, IUPUI facilities, Indiana Government Center, and Indianapolis Star/News building. MAER is the sister company of Indianapolis Power and Light Company with IPALCO enterprises being the common parent company. MAER operates a central processing plant where city water is chilled to forty degrees Fahrenheit (40°) using steam turbine driven chiller compressors, a refrigerant condenser, an expansion valve, and an evaporator. Tracy Aff'd at ¶ 2. The water is then chemically treated to prevent corrosion, deposition, and microbiological growth. *Id.* at ¶ 3. The chilled and treated water is distributed to customers through an underground (closed loop) distribution system. MAER's customers use the chilled water to cool and condition the air in their buildings. Once the water is fifty-two degrees Fahrenheit (52°), it is returned to MAER through the same underground distribution system. Upon receiving the warmed and used water, MAER re-treats and re-chills the water to be sent back out to customers.

MAER charges its customers based on the quantity of water delivered to the customer, as well as the temperature differences in the water that is returned. Snyder Aff'd at ¶ 2. This relationship is converted to "ton hours" and it is the basis for the consumption charge paid by the consumer. *Id.* If the consumer does not return the same quantity of water that is delivered, a "lost water charge" is incurred. Ex. B.

MAER is a registered retail merchant that collects sales tax on the sales made to non-exempt customers [1] and remits such monies to the Department. In the tax years 1990, 1991, and 1992, MAER purchased equip-

---

**1.** Several of MAER's customers are government entities which are themselves exempt from sales and use tax. IND CODE ANN. § 6–2.5–5–16 (West 1989).

ment[2] and consumables[3] for its business but paid no sales and use tax. MAER believed it was exempt from such taxation under the equipment exemption, IND.CODE ANN. § 6–2.5–5–3 (West Supp.1996), and the consumption exemption, IND.CODE ANN. § 6–2.5–5–5.1 (West Supp.1996), or as a utility, IND.CODE ANN. §§ 6–2.5–4–5, 6–2.5–5–12 (West 1989).

### PROCEDURAL HISTORY

On December 7, 1993, the Department notified MAER that they owed retail sales tax plus interest for the tax years 1990, 1991, and 1992, totaling $702,664.04. MAER protested the assessment on February 7, 1994. A hearing was held, and the Department issued a Letter of Findings on October 25, 1994, denying MAER's challenge. MAER filed a rehearing request on November 21, 1994, which was granted, but the second Letter of Findings, issued on March 24, 1995, provided no relief. MAER filed this original tax appeal on April 24, 1995, to set aside the Department's final determination. The parties are before this Court on MAER's motion for summary judgment.

### DISCUSSION AND ANALYSIS
#### Standard of Review

The Tax Court reviews final determinations by the Department *de novo* and is bound by neither the evidence presented nor the issues raised at the administrative level. *Raintree Friends Housing, Inc. v. Department of State Revenue*, 667 N.E.2d 810, 813 (Ind. Tax Ct.1996). The taxpayer claiming an exemption bears the burden of proving that the requirements of that exemption are satisfied. *See Indiana Waste Systems v. Department of State Revenue*, 633 N.E.2d 359, 362 (Ind. Tax Ct.1994); *Mechanics*

*Laundry & Supply, Inc. v. Department of State Revenue*, 650 N.E.2d 1223, 1227 (Ind. Tax Ct.1995). This is a difficult burden, for exemption statutes are strictly construed against the taxpayer. *Mechanics Laundry*, 650 N.E.2d at 1227.

A motion for summary judgment will be granted only when there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). "If no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment." *Encyclopaedia Britannica, Inc. v. State Bd. of Tax Comm'rs*, 663 N.E.2d 1230, 1232 (Ind. Tax Ct.1996).

#### The Industrial Exemptions

Indiana imposes an excise tax on tangible personal property stored, used, or consumed in Indiana. IND.CODE ANN. § 6–2.5–3–2 (West Supp.1996). Several exemptions from this use tax are available to taxpayers, *see* IND.CODE ANN. §§ 6–2.5–5–1 to –33 (West 1989), including what are collectively known as the industrial exemptions, *see Harlan Sprague Dawley v. Department of State Revenue*, 605 N.E.2d 1222, 1224 (Ind. Tax Ct.1992). MAER claims it is entitled to two of the industrial exemptions: the equipment exemption, IND.CODE ANN. § 6–2.5–5–3, and the consumption exemption, IND.CODE ANN. § 6–2.5–5–5.1.

#### I. The Equipment Exemption

■ MAER did not pay sales tax on the equipment it purchased to operate its chilling and treatment facility because it believed it was exempt. The Department denied MAER the exemption because it found that MAER is providing a cooling service. The Department argues that MAER's chilling of water did not significantly change the water,

---

2. The equipment MAER purchased in 1990 for which it claims to owe no tax consists of: cooling towers, a chilled water facility, a circuit breaker, and air circuit breakers. The equipment purchased in 1991 consists of: collars for chillers, chillers, cooling towers, a chemical system for water treatment, facility housing equipment, a computer system to control chillers, a chilled water facility, plant electrical work, a primary pump, and a separator. And, in 1992, the equipment purchased consisted of: chillers, cooling towers, a chemical system for water treatment, a chilled water facility, a valve body

assembly, a computer system to control the chillers, steam nozzles, a production facility, a voltage starter for the cooling tower pump, and electrical work at the chilling facility. Clark Aff'd at ¶ 5 (citing exhibit A).

3. The consumables MAER purchased in 1991 for which it claims to owe no tax consist of chemicals for water treatment and steam service to run chillers. In 1992, the consumables consisted only of chemicals for water treatment. Clark Aff'd at ¶ 5 (citing exhibit A).

and thus no "production" or "processing" occurred, and no "other tangible personal property" was produced. This Court is not persuaded.

The equipment exemption provides:

Transactions involving manufacturing machinery, tools, and equipment are exempt from the state gross retail tax if the person acquiring that property acquires it for his direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property.

IND.CODE ANN. § 6–2.5–5–3. To qualify for this exemption, taxpayers must meet two requirements. First, the taxpayer must acquire the property for his direct use. Second, the taxpayer must use that property in direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property. This is known as the double direct standard. *See Department of State Revenue v. Cave Stone,* 457 N.E.2d 520, 525 (Ind. 1983); *Waste Systems,* 633 N.E.2d at 362. In the instant case, the parties do not dispute that MAER acquired the equipment for its direct use. Rather, the parties differ as to whether MAER's operation constitutes "direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property." IND.CODE ANN. § 6–2.5–5–3.

The equipment exemption requires taxpayers to show that they are engaged in "production." *Mechanics Laundry,* 650 N.E.2d at 1228. "Production" can occur through manufacturing, processing, or the other activities listed in the exemption. *Cave Stone,* 457 N.E.2d at 524. Entitlement to the exemption does not rest on whether the taxpayer's operation fits within a particular category, such as processing or manufacturing. *Harlan Sprague,* 605 N.E.2d at 1226. The terms themselves are malleable and logically overlap. *See Cave Stone,* 457 N.E.2d at 525; *Harlan Sprague,* 605 N.E.2d at 1226. As the Supreme Court stated in *Cave Stone,* the terms listed in the exemption are not "mutually exclusive" but "provide a comprehensive description of various means of production." 457 N.E.2d at 524. "Production" is defined

broadly in this context and focuses on the creation of a marketable good. *Id.; Mechanics Laundry,* 650 N.E.2d at 1229; *Harlan Sprague,* 605 N.E.2d at 1228.

In *Cave Stone,* our high court ruled that "production" occurred where crude stone, blasted from a quarry, was crushed into sized aggregate stone. 457 N.E.2d at 525. That case overturned a Court of Appeals decision, which held that the exemption required a "transformational effect." *Id.* at 524. The taxpayer claimed the exemption for the equipment and supplies associated with transporting crude stone from the blasting area to the crusher and from the crusher to separated stockpiles. *Id.* at 521–23. The Court of Appeals found that "the equipment, supplies and repairs used in the hauling crude stone and stocking out steps were not directly used in the direct processing of the stone because no direct processing occurred during the transportation, i.e. the stone did not undergo any change in 'form, contour, chemical combination, physical appearance, or otherwise.'" *Id.* at 524. The Supreme Court rejected this position as too narrow a construction of the statute. *Id.* The Court stated:

The transportation equipment was essential to the achievement of a transformation of the crude stone into aggregate stone; it played an integral part in the ongoing process of transformation. That no specific transformation occurred in the period of time that it was being transported is irrelevant. It is elementary that unless the stone is transported from the quarry to the crusher and from the crusher to the stockpiles, no marketable product will result.

*Id.* The high court focused on the process by which the original material became a marketable product—the process by which crude stone was transformed into sized aggregate stone. Even though the trucks were not processing the stone, an operation was occurring by which the end product of aggregate stone was created. It was this creation that constituted production for purposes of the exemption. *Accord Department of Revenue v. Allied Drum Service, Inc.,* 561 S.W.2d 323 (Ky.1978) (holding that machinery used to process unusable drums into serviceable

drums was exempt); *Jackson Excavating Co. v. Administrative Hearing Comm'n*, 646 S.W.2d 48 (Mo.1983) (holding that machinery used to process "raw" water into potable water was exempt).

In *Harlan Sprague*, this Court ruled that "production" occurred where rats were bred in a sterile and quarantined environment to create offspring with "particularized desired characteristics." 605 N.E.2d at 1223–24. The Department argued that reproduction among rats occurs naturally regardless of the environment, so that rats bred by the taxpayer were no different than rats born in the wild. *Id.* at 1226. The Department contended that rat breeding did not constitute production since no "new product distinct from its inputs" emerged. *Id.* In rejecting the Department's reasoning, this Court held that the taxpayer did create something new because, unlike rats born in the wild, the bred offspring were virus and pathogen free. *Id.* at 1228. This made the bred rats valuable goods for research laboratories to use in medical testing. *Id.* This fact distinguishes bred rats from other rats and provided the basis for the taxpayer to claim the exemption.

However, when goods are not "produced" and a service is provided, the exemption is properly denied. In *Mechanics Laundry*, this Court found that the laundering of soiled textiles did not produce "other tangible personal property," and thus the taxpayer was responsible for sales and use tax on its equipment. 650 N.E.2d at 1233. In that case, this Court distinguished the production of a marketable good from the perpetuation of a previously manufactured good. *Id.* at 1230. The taxpayer argued that when it laundered a soiled textile, it produced a different product, namely a clean textile. *Id.* at 1229. The Court rejected this reasoning, finding that cleaning merely returned the textile to its original state and did not constitute "production." *Id.* at 1229, 1233. By laundering textiles manufactured by others, the taxpayer was providing a service. *Id.*

Applying the law to the present case, this Court finds that MAER is engaged in the "direct production" of "other tangible personal property." In order to cool water to 40°, MAER uses steam-driven turbine chillers to remove heat, a form of energy, from the water. This process creates a significant change in the properties of water.[4] Tracy Aff'd at ¶¶ 3–4. The chilled water is then pumped through a primary chiller loop where it is chemically treated to prevent corrosion, deposition, and microbiological growth. *Id.* at ¶¶ 7–9. MAER processes ordinary water into water capable of cooling and conditioning air in buildings. MAER's 40° water has utility and properties that the water previously lacked. Analogous with stone put through a crusher and rats bred under controlled conditions, city water does not retain its original state once it is chilled and treated. MAER's operation creates a new and marketable good, or in the language of the statute, produces "other tangible personal property."

## II.  Consumption Exemption

MAER also claims a consumption exemption for the water treatment chemicals and steam service it purchased. The consumption exemption provides:

> Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for his direct consumption as a material to be consumed in the direct production of other tangible personal property in his business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arobriculture. This exemption includes transactions involving acquisitions of tangible personal property used in commercial printing as described in IC 6–2.1–2–4.

IND.CODE ANN. § 6–2.5–5–5.1(b). As one of the three industrial exemptions, the consumption exemption is treated, in most respects, identically to the equipment exemption. *Harlan Sprague*, 605 N.E.2d at 1227. The parties made the same arguments with

---

**4.** The Department concedes that MAER's operation effects a molecular change in the properties of water. Tr. at 37.

respect to both exemptions. The Court finds that MAER consumed the chemicals and steam service in the "direct production" of "other tangible personal property," and, therefore, is entitled to the consumption exemption.

### III. Alternative Claims

MAER's alternative arguments, that it operates as a non-regulated public utility entitled to the utility exemption, IND.CODE ANN. § 6–2.5–5–12, and it constitutes a public utility for purposes of IND.CODE ANN. § 6–2.5–4–5 or § 6–2.5–5–12, are not addressed.

### *CONCLUSION*

MAER acquired equipment and consumables for direct use in its operations.

MAER's chemical treatment and chilling of water constitutes "direct production" of "other tangible personal property" for purposes of the industrial exemptions. As a result, MAER is entitled to claim an exemption from sales and use taxes under both the equipment exemption, IND.CODE ANN. § 6–2.5–5–3, and the consumption exemption, IND. CODE ANN. § 6–2.5–5–5.1. The Department's final determination of March 24, 1995 is, therefore, REVERSED.