**ROTATION PRODUCTS
CORP., Petitioner,**

v.

**DEPARTMENT OF STATE REVENUE,
Respondent.**

No. 49T10–9508–TA–00081.

Tax Court of Indiana.

Jan. 30, 1998.

Thomas F. Schnellenberger, Stephan L. Hodge, McHale, Cook & Welch, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Rotation Products Corporation (RPC) appeals a final determination of the Department of Revenue (Department) denying it an exemption from sales and use tax for equipment it used and materials it consumed in the remanufacturing of roller bearings during the tax years 1990 through 1992. The issue to be decided is whether this activity constitutes production of other tangible personal property, thereby entitling RPC to an exemption for the equipment used and materials consumed in this activity.

## PROCEDURAL HISTORY

On December 3, 1993, the Department completed its audit of RPC's sales and use tax returns. The auditor concluded that RPC owed sales and use taxes for the tax years 1988 through 1992. On January 26, 1994, the Department issued RPC notices of proposed assessment for those years.[1] RPC filed a timely written protest. The Department held a hearing February 25, 1995 and issued a letter of findings on June 1, 1995. In its letter of findings, the Department upheld RPC's protest for the 1988 and 1989 tax years because the notice was mailed after the three-year limitations period. *See* IND.CODE ANN. § 6–8.1–5–2(a) (West Supp. 1997). However, the Department denied RPC's protest with respect to the taxes and penalties assessed for the 1990 through 1992 tax years.[2] On August 10, 1995, RPC filed this

---

1. *See* IND.CODE ANN. § 6–8.1–5–1(a) (West Supp. 1997). The Department issues a notice of proposed assessment when it determines that a taxpayer has not reported the proper amount of tax due.

2. The Department upheld RPC's protest with respect to the method of calculating the ratios of non-exempt and exempt uses of the equipment for the years in issue. That determination is not an issue in this original tax appeal.

original tax appeal, and on March 29, 1996, the parties tried this cause before this Court.

## FACTS

RPC is engaged in the repair and remanufacture of roller bearings. Roller bearings are used in industrial machinery. They mechanically couple a stationary machine element with a turning machine element. This mechanical coupling reduces the friction between the elements, thereby increasing their useful life.

Roller bearings have a number of components and vary in size. Roller bearings consist of an outer ring, an inner ring, rolling elements, and a roller cage. The rolling elements and the roller cage fit snugly between the inner and outer rings. The space between the inner and outer rings is called the raceway.

When a roller bearing is working, the turning elements and the working surfaces undergo friction. The friction causes pitting and/or a gradual wearing down (fatiguing) of the turning elements and the working surfaces. As a result, at some point, the bearing ceases to be operational. When this happens, RPC's customers bring the non-operational bearing to RPC.

RPC's work on non-operational roller bearings depends on the condition of the roller bearings.[3] Often, the bearing is so worn out that RPC cannot remanufacture it. The bearing is discarded for scrap. In those cases, RPC manufactures an entirely new bearing. The parties have stipulated that the equipment used in this process is exempt from Indiana sales and use tax. In other cases, the bearing does not need remanufacturing; rather, it merely needs to be cleaned and polished. The parties have stipulated that the equipment and materials used in this process are subject to Indiana sales and use tax.

Some bearings have suffered more wear and require more than a mere cleaning and polishing, but they need not be discarded as scrap because they are salvageable. RPC remanufactures these bearings. The parties dispute the taxability of equipment used and materials consumed in this process. The remanufacturing process is quite involved. The bearing is first taken apart, cleaned, and inspected. Then the inner and outer rings, which are made of hardened steel, are ground down to make them smooth. This grinding makes the rings a different thickness, thereby changing the distance between the inner and outer rings. Consequently, RPC must measure the distance between the inner ring and the outer ring, and fabricate a new rolling cage and rollers so that they fit snugly between the two rings. (Tr. at 13). The parties dispute whether equipment used and materials consumed in grinding and polishing the old rings and calculating the distance between the rings are exempt from sales and use tax. Additional facts will be provided as necessary.

## STANDARD OF REVIEW

▮ This Court reviews the Department's final determinations de novo and is bound by neither the evidence nor the issues raised at the administrative level. *See* IND.CODE ANN. § 6–8.1–5–1(h) (West Supp.1997); *ANR Pipeline Co. v. Department of State Revenue,* 672 N.E.2d 91, 93 (Ind. Tax Ct.1996).

## DISCUSSION AND ANALYSIS

Indiana imposes an excise tax (gross retail or sales tax) on retail transactions in Indiana. IND.CODE ANN. § 6–2.5–2–1 (West 1989). Indiana also has a complementary excise tax (use tax) on tangible personal property stored, used, or consumed in this state. *See* IND.CODE ANN. § 6–2.5–3–2 (West Supp. 1997); *Mid–America Energy Resources, Inc. v. Department of State Revenue,* 681 N.E.2d 259, 261 (Ind. Tax Ct.1997), *review denied.* Several exemptions from these complementary taxes are available, *see* IND.CODE ANN.

---

**3.** The parties have stipulated that RPC's work on the roller bearings may be divided into three categories: Class A, Class B, and Class C work. However, this classification scheme does not aid in the analysis of the case. First, the classification scheme does not seem to encompass the manufacturing of entirely new roller bearings. Second, the parties do not identify a material difference between Class B and Class C work. Consequently, this Court declines to use those classifications.

§§ 6–2.5–5–1 to –38.2 (West 1989 & Supp. 1997), some of which are collectively known as the industrial exemptions.[4] *See Mid-America Energy Resources*, 681 N.E.2d at 261; *Harlan Sprague Dawley, Inc. v. Department of State Revenue*, 605 N.E.2d 1222, 1224 (Ind. Tax Ct.1992). RPC claims that its purchases of certain items used in its remanufacturing of roller bearings are exempt from sales and use tax under section 6–2.5–5–3 (the equipment exemption) and section 6–2.5–5–5.1 (the consumption exemption).

The statutes provide in relevant part:

Transactions involving manufacturing machinery, tools, and equipment are exempt from the state gross retail tax if the person acquiring that property acquires it for direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, processing, refining, or finishing of other tangible personal property.

IND.CODE ANN. § 6–2.5–5–3(b) (West Supp. 1997).

Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for direct consumption as a material to be consumed in the direct production of other tangible personal property in the person's business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture. . . .

*Id.* § 6–2.5–5–5.1(b).[5]

■ In Indiana, it is well-settled that exemptions are strictly construed against the taxpayer, *see Harlan Sprague Dawley, Inc. v. Department of State Revenue*, 605 N.E.2d 1222, 1225 (Ind. Tax Ct.1992), and courts have no power to create an exemption in the absence of statutory authority. However, "[w]hen construing an exemption, ... the court must always bear in mind the legislature's intent to avoid reading the exemption so narrowly its application is defeated in cases rightly within its ambit." *Id.*

■ The exemption provisions at issue in this case cover a host of different activities and factual situations. There are innumerable ways to produce other tangible personal property, and the exemption provisions cannot be expected to give a precise answer to each factual situation that arises. This Court will therefore construe these exemptions in light of our legislature's broad purposes in enacting them. In construing these exemptions, this Court may not ascribe a penuriousness to the legislature that was not intended, nor may it too readily give its succor to a taxpayer. This approach imposes the burden on the taxpayer of demonstrating to this Court its eligibility for the exemption. *See Monarch Steel Co. v. State Bd. of Tax Comm'rs*, 669 N.E.2d 199, 201 (Ind. Tax Ct.1996). After all, it is the taxpayer who knows his business, and it is the taxpayer who seeks the exemption.

■ The legislature had two purposes in mind when it exempted the purchase of equipment used and materials consumed in the production of "other tangible personal property." The first was "to encourage industrial growth by allowing an exemption for items closely connected *with the production of goods*." *Harlan Sprague Dawley*, 605 N.E.2d at 1228 (internal quotation marks omitted). The second was to limit the effect of tax pyramiding, a situation where a tax is levied upon a tax.[6] *See id.*

---

4. Other states use the term, manufacturing exemptions. As a practical matter, the terms have the same meaning and are interchangeable. *See infra* note 8.

5. .The gross retail tax exemptions contained in chapter 6–2.5–5 of the Indiana Code apply to the tax imposed by section 6–2.5–3–2. *See* IND.CODE ANN. § 6–2.5–3–4(a)(2) (West 1989).

6. Tax pyramiding in the sales and use context occurs where the inputs (raw materials, machinery, energy, etc.) into the production of other goods are taxed. When the other goods are sold, part of the price reflects the tax on the inputs. That part of the price reflecting the tax on the inputs is taxed again when the other goods are sold. This is tax pyramiding. *See* JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE AND LOCAL TAXATION 727 (5th ed.1988). This was the evil the legislature intended to limit when it enacted the gross retail tax and the industrial exemptions. *Harlan Sprague Dawley*, 605 N.E.2d at 1228. *See also* 2 JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 14.01 (Supp.1993) (States often enact exemptions to exclude from taxation many "intermediate transactions in the economic process.").

The parties discuss *Department of Revenue v. Cave Stone, Inc.*, 457 N.E.2d 520 (Ind.1983) and its applicability to the case at bar. In *Cave Stone*, the Indiana Supreme Court analyzed a predecessor statute (IND.CODE § 6–2–1–39(b)(6) (1976) (repealed 1981)) to the present equipment exemption statute. In determining that trucks used to haul crude stone to a crusher were exempt from tax, the court rejected a narrow construction of the statute and embraced a comprehensive definition of the exemption provisions, i.e., the activities—manufacturing, processing, finishing, etc.—listed in the statute. *Id.* at 524. "The exemption provisions ... provide a comprehensive description of the various means of production ... [and] circumscribe[ ] *all* of the operations or processes by which the finished product is derived." *Id.* (emphasis added). A taxpayer's qualification for an industrial exemption is not based on whether the activity could be called manufacturing, processing, or any other of the listed terms, but rather whether the activity was directly involved in the creation of a product. *See Mid–America Energy Resources*, 681 N.E.2d at 262 ("Entitlement to the exemption does not rest on whether the taxpayer's operation fits within a particular category, such as processing or manufacturing.") (citing *Harlan Sprague Dawley*, 605 N.E.2d at 1226). Because the trucks were an integral part of the production of the stone, they fell under the equipment exemption and hence were exempt from sales and use tax. *Cave Stone*, 457 N.E.2d at 524. *See also* IND. ADMIN. CODE tit. 50, r. 2.2–5–8(e) (1996) (property exempt from sales and use tax if an "essential and integral part of an integrated process which produces tangible personal property").

*Cave Stone* presented a different question from the one at bar. In *Cave Stone*, it was undisputed that the crushed stone was a product. The critical question was whether the trucks were *directly* involved in making that product. *See Mid–America Energy Resources*, 681 N.E.2d at 262 (Ind. Tax Ct.1997) (describing *Cave Stone* double direct standard). The question here is different. The central dispute is whether a remanufactured bearing is a new product.

*Cave Stone*'s approach to the industrial exemptions has been applied to cases where the question was whether a product was created. For example, in *Harlan Sprague Dawley*, this Court drew from the teaching of *Cave Stone* in concluding that specially bred laboratory rats were products: "In the context of the industrial exemptions, production is viewed expansively as all activity directed to increasing the number of scarce economic goods." *Harlan Sprague Dawley*, 605 N.E.2d at 1228 (quoting *Cave Stone*, 457 N.E.2d at 524 (internal quotation marks omitted)). The laboratory rats were scarce economic goods. Laboratories used them for specialized research, and the rats were much more suitable for that research than their naturally occurring counterparts. Consequently, this Court found that they were products and held that the taxpayer was entitled to the industrial exemptions.[7]

In its decision, this Court also relied on the fact that the legislative purposes of encouraging industrial growth and avoiding tax pyramiding were furthered by granting an exemption. *See id.; see also General Motors Corp. v. Department of State Revenue*, 578 N.E.2d 399, 404 (Ind. Tax Ct.1991), *aff'd*, 599 N.E.2d 588 (Ind.1992). As this Court stated,

> If [the taxpayer's] inputs are taxed, [the taxpayer] will be likely to pass along the tax to its buyers in research laboratories. In turn, the labs will be likely to pass on their added costs to the consumers.... Part of the sales tax assessed on the final purchase will then be a tax upon a tax— tax pyramiding. This multiple layering of costs is precisely the evil the legislature sought to avoid when enacting [the exemptions].

*Harlan Sprague Dawley*, 605 N.E.2d at 1228.

Subsequent case law has reemphasized *Harlan Sprague Dawley*'s focus on whether a product was created. In *Mechanics Laundry & Supply, Inc. v. Department of State Revenue*, 650 N.E.2d 1223 (Ind. Tax Ct.1994),

---

**7.** *Harlan Sprague Dawley* did not decide which of the taxpayer's purchases were exempt. *Id.* at 1230.

this Court evaluated whether the laundering of textiles constituted processing in the context of the industrial exemptions. In concluding that it did not, this Court found that the laundering of soiled textiles merely "perpetuate[d] textiles that were produced by others." *Id.* at 1230 (citing *Undercofler v. Macon Linen Serv., Inc.,* 114 Ga.App. 231, 241, 150 S.E.2d 703, 709 (1966)). *See also Indiana Waste Sys. v. Department of State Revenue,* 633 N.E.2d 359 (Ind. Tax Ct.1994) (taxpayer not entitled to exemption where taxpayer compressed garbage but did not produce other tangible personal property). Because the taxpayer in *Mechanics Laundry* produced no new tangible personal property, it was not entitled to the industrial exemption.

In *Mid–America Energy Resources,* this Court held that a taxpayer who chilled water for use in customers' air conditioning systems was entitled to an exemption for equipment used and materials consumed in the production of the chilled water. This Court focused its inquiry on whether the taxpayer's operation created a marketable good. *Id.* at 262. "[W]hen goods are not produced, and a service is provided, the [industrial] exemption[s] are properly denied." *Id.* at 263.

■ Not surprisingly, the parties focus their inquiry on whether RPC produces a new good [8] when it remanufactures the roller bearings and whether tax pyramiding is prevented by granting the exemption. The Department, citing *Samper v. Department of State Revenue,* 231 Ind. 26, 106 N.E.2d 797 (1952) argues that RPC merely "restores existing bearings to a useful condition—a service activity." (Rep't Br. at 9). As the Department would have it, RPC restored the roller bearings to a usable condition, which constitutes repair. According to the Department's interpretation, *Samper* requires a finding that repair activity constitutes a ser-

vice, not production. *See id.* at 802–03. Therefore, RPC produced no new goods when it performed this service and is not entitled to the exemptions it seeks. RPC counters by arguing that it takes raw materials in the form of unusable roller bearings and creates entirely new products, i.e., the remanufactured roller bearings.

For purposes of the analysis, this Court will accept the Department's characterization of RPC's operation as repair. However, this Court's focus in this case is not the characterization of RPC's operation, but rather whether RPC's operation produces other tangible personal property. *See Mechanics Laundry,* 650 N.E.2d at 1227–28 (focusing on whether taxpayer's operation constituted production rather than whether it could be characterized as processing); *see also Mid–America Energy Resources,* 681 N.E.2d at 262 (taxpayer's qualification for exemption based on whether production occurs, not whether operation fits within particular category). By focusing on *Samper,* the Department is essentially asking this Court to adopt a rule that any activity that may be characterized as repair cannot constitute production for the purposes of the industrial exemptions. An analysis of *Samper* and the exemption provisions demonstrates the flaw in the Department's position.

*Samper* arose under the Gross Income Tax Act [9] and therefore did not involve the industrial exemptions. *Samper* involved two issues: 1) whether the repairing of electronic equipment constituted a retail sale or a sale of services and 2) whether the sale of parts incident to the repair work could be treated as retail sales. *Samper* did not address whether repair activity could constitute production, and, if it could, where the line between mere service and production is to be drawn.

---

**8.** RPC states the issue as whether RPC engages in manufacturing when it remanufactures roller bearings. (Pet'r Br. at 1). Many other jurisdictions state the issue similarly. *See* Annotation, *What Constitutes Manufacturing and Who is a Manufacturer under Tax Laws,* 17 A.L.R.3d 7 (1968 & Supp.1997). The term, manufacturer, is a convenient shorthand for a taxpayer engaged in the production of other tangible personal property. However, this Court declines to frame

the issue in these terms. First, "manufacturing" is but one means of production listed in the statutes. Second, Indiana case law focuses on the production of other tangible personal property.

**9.** IND.CODE ANN. §§ 64–2601, –2603, –2604 (Burns 1951) (repealed 1981).

■ In urging this Court to follow *Samper*, the Department does not acknowledge the possibility that repair activity could constitute production. However, the legislature has recognized this possibility. *See* IND. CODE ANN. § 6–2.5–5–5.1 (the consumption exemption). "Repairing" is one of the listed activities in section 6–2.5–5–5.1. Because the listed activities "provide a comprehensive description of various means of production," *Cave Stone*, 457 N.E.2d at 524, it follows that repair activity *may* (though not necessarily) constitute production for the purposes of the exemption statutes.[10] Therefore, even if *Samper* stood for the proposition that ·*all* repair activity constituted a service, it would not control the outcome here. In enacting section 6–2.5–5–5.1, the legislature has determined that repair activity may constitute production. To the extent that applying *Samper* by analogy to cases where the issue is whether production occurs is inconsistent with section 6–2.5–5–5.1, *Samper* cannot be followed.[11]

■ Because there is no per se rule that repair activity cannot constitute production, the issue is the characterization of RPC's repair activity as either service or production. In general, repair activity is not within the ambit of the industrial exemptions. This is so because ordinary repair creates no new products and is properly characterized as a service. *See Mid–America Energy Resources*, 681 N.E.2d at 263. Ordinary repair activity merely perpetuates existing products, *see Mechanics Laundry*, 650 N.E.2d at 1230, and although ordinary repair activity may impact the number of scarce economic goods by increasing their longevity, it cannot be said that ordinary repair *produces* scarce economic goods. *See id.* at 1229–30. Consequently, the industrial exemptions are properly denied in those cases.

However, as the legislature has recognized, at some point, the repair activity is so extensive in nature and so transforms the object such that it cannot be characterized as a mere service. Rather, the repair activity produces a new product and therefore constitutes exempt activity. The reported decisions of other jurisdictions support this conclusion. For example, in *Schulte Oil Co. v. State Tax Comm'n*, 882 P.2d 65 (Okla.1994), the Oklahoma Supreme Court concluded that a taxpayer who engaged in the business of remanufacturing damaged and unusable oil field pipe was a manufacturer and not a repairer.[12] The court stated,

---

**10.** Section 6–2.5–5–3 (the equipment exemption), as opposed to section 6–2.5–5–5.1, contains no reference to repair activity. This does not mean that the definition of production is different with respect to the equipment exemption. This would be contrary to case law construing the exemptions similarly. *See Mid–America Energy Resources*, 681 N.E.2d at 263–64; *Harlan Sprague Dawley*, 605 N.E.2d at 1227. Additionally, the terms listed in the exemption statutes give a comprehensive definition of production and are not "mutually exclusive." *Cave Stone*, 457 N.E.2d at 524. *See also Mid–America Energy Resources*, 681 N.E.2d at 262 ("The terms themselves are malleable and logically overlap."). There is no reason to conclude that the legislature intended the equipment exemption to be any less comprehensive than the consumption exemption. Accordingly, this Court will not create a distinction where there is none. *See Harlan Sprague Dawley*, 605 N.E.2d at 1227.

**11.** This Court also notes that the result in *Samper*, i.e., that the repair of radio equipment is a service, is already dictated by case law construing the industrial exemptions to the gross retail tax. Run-of-the-mill repair work for another is a service; it produces no other tangible personal property. *See Mid–America Energy Resources*,

681 N.E.2d at 263; *Mechanics Laundry*, 650 N.E.2d at 1229–30.

**12.** *Schulte Oil* raises an issue not discussed by the parties: the significance of the fact that RPC's customers own the roller bearing being remanufactured. The *Schulte Oil* court discussed the difference between a manufacturer and a repairer:

> Ordinarily a repairer furnishes labor and material to the *owner of an article* for the purpose of restoring its normal condition. In this situation the article *remains the property* of those for whom the service is performed. A manufacturer, on the other hand, *purchases* the article it ultimately transforms into a *usable* product and then puts it on the market.
> *Id.* at 72 (footnote omitted).

Under this aspect of the *Schulte Oil* analysis, RPC would not ·be entitled to the exemptions because the roller bearings that RPC remanufactures are the property of RPC's customers. However, this Court finds this aspect of *Schulte Oil* unpersuasive for two reasons. First, any rule that barred a finding that a taxpayer was engaged in production simply because the taxpayer performed work on the property of another would be contrary to statute. The Indiana statu-

Here, the process of rebuilding damaged oilfield pipe transforms a virtually unusable and non-marketable product into serviceable and saleable merchandise. While it is true that *after* the remanufacturing process is accomplished the end product is still *used oil field pipe*, the remanufactured article is nonetheless *new and different from the form of the material used in making it.*

*Id.* at 72. Another example is found in *Department of Revenue v. Allied Drum Serv., Inc.,* 561 S.W.2d 323 (Ky.1978). In *Allied Drum,* the Kentucky Supreme Court concluded that machinery used in the remanufacturing of drums was exempt from sales and use tax. The court stated,

We are of the opinion that the definition of a manufacturing process is that: Material having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing by machinery.

*Id.* at 325–26.

This Court is aware of the contrary views of other jurisdictions. *See, e.g., Mack Trucks, Inc. v. Commonwealth,* 157 Pa. Cmwlth. 14, 629 A.2d 179 (1993) (rejecting manufacturing exemption for rebuilding engines), *aff'd,* 536 Pa. 541, 640 A.2d 411 (1994). This Court declines to adhere to the view expressed in *Mack Trucks.* In Indiana, repair (which is, by definition, an operation on a previously existing good) is a permissible means of production. Some (though by no means all) industrial work on previously existing goods may therefore qualify for an exemption. Returning non-functioning goods to the form they possessed as originally manufactured does not categorically bar a determination that production is taking place. *Mack Trucks* rejects this proposition. It is therefore unpersuasive.

Both *Allied Drum* and *Schulte Oil* focused on the fact that the remanufacturing process at issue in those cases converted a product with little or no market value into a marketable product. *See* 2 HELLERSTEIN & HELLERSTEIN, STATE TAXATION, *supra* note 6, ¶¶ 14.05[2][c], 14.05[2][I] (Supp.1993 & Cum. Supp.1997–98) (discussing *Allied Drum* and *Schulte Oil* ). RPC's process would satisfy this test. In this case, used roller bearings having only scrap value were converted into a useful product. *See* 26 C.F.R. § 48.0–2(a)(4)(i) (1997) (manufacturer defined as a person who converts "scrap, salvage, or junk material" into a taxable article). *See also Ruan Financial Corp. v. United States,* 976 F.2d 452, 456 (8th Cir.1992) (one reason for rejecting characterization of rebuilding tractors as manufacturing is that tractors before rebuilding *had more than scrap value*).

■ In most cases, the test in *Allied Drum* and *Schulte Oil* would be sufficient to separate mere service from production. Usually, a substantial amount of work will have to be performed to transform materials with only scrap value into serviceable and marketable products. In most cases, the substantial amount of work required will "result in an 'end product' that is 'substantially different from the component materials used.'" *Mechanics Laundry,* 650 N.E.2d at 1229. However, elaboration is necessary to ensure that only that remanufacturing which constitutes production will qualify for the industrial exemptions. An evaluation of whether activity labeled remanufacturing actually constitutes production within the meaning of the industrial exemptions is a fact-sensitive inquiry, and there are no bright-line tests.

The case law reveals three factors germane to this fact-sensitive inquiry. The first is an adaptation of the requirement of a substantially different end product: the sub-

tory scheme expressly contemplates repair work (i.e., work done on the property of another) as a *possible* means of production. *See* IND.CODE ANN. § 6–2.5–5–5.1. *Cf.* IND. ADMIN. CODE tit. 50, r. 2.2–5–7(d) (grain drying bins exempt without reference to who owns the grain).

Second, such a rule would be contrary to precedent. In *Oster v. Department of Treasury,* 219 Ind. 313, 37 N.E.2d 528 (1941), the Indiana

Supreme Court held that the fact that a taxpayer performed work on property belonging to another did not preclude a finding that the work constituted manufacturing. Moreover, having a rule that work done on the property of another cannot constitute production improperly makes the relationship between two taxpayers the determinative factor. Instead, the focus should be on the activity alleged to constitute production.

stantiality and complexity of the work done on the existing article and the physical changes to the existing article, including the addition of new parts. The other two factors derive from the observations of the courts dealing with this issue: a comparison of the article's value before and after the work,[13] and how favorably the performance of the remanufactured article compares with the performance of newly manufactured articles of its kind.[14] Additionally, this Court concludes that another factor is applicable to this inquiry: whether the work performed was contemplated as a normal part of the life cycle of the existing article. This additional factor will prevent work that merely perpetuates existing products from qualifying for an industrial exemption. *See Mechanics Laundry,* 650 N.E.2d at 1230.

In this case, RPC performs substantial and complex work and significantly changes the roller bearings it remanufactures. First, the old rolling elements and cages are discarded. Second, RPC grinds and polishes the outer surface of the inner rings and the inner surface of the outer rings, creating the smooth raceway that houses the new rolling elements. The grinding and polishing transforms a rough and pitted, non-functional load bearing surface into a functional one. Third, RPC uses a computer-aided design system to calculate the distance between the inner and outer rings (because the grinding and polishing has changed that distance) and fabricates new rolling elements and cages to fit snugly in the raceway.

■ An evaluation of the second factor also is favorable to RPC's position. When an unusable roller bearing is brought to RPC for remanufacture, it has no market value as

a roller bearing.[15] RPC then "transforms a virtually unusable and non-marketable product into serviceable and saleable merchandise." *Schulte Oil,* 882 P.2d at 72; *see also Allied Drum,* 561 S.W.2d at 325 ("The thread that runs though all these cases [finding a sales and use tax exemption where an unserviceable product is restored] is that material of little or no market value has been converted into a marketable product for its intended use.").

The third factor similarly favors RPC. The remanufactured bearings compare favorably with newly manufactured roller bearings. This is evidenced by the fact that RPC gives its customers a guarantee that the remanufactured roller bearing is as good or better than it was as originally manufactured (Ex. A, Tr. at 14–15) and that the "load-carrying capacity of the bearing is greater than it was when it was new." (Tr. at 14). *Cf. Chrome Deposit Corp. v. Department of State Revenue,* 557 N.E.2d 1110, 1114, 1117 (Ind. Tax Ct.1990) (fact that performance of customer's equipment was enhanced rather than merely restored significant in distinguishing taxpayer's process from ordinary repair), *aff'd,* 578 N.E.2d 643 (Ind.1991).

Finally, an analysis of the fourth factor favors RPC as well. Even if cleaning and polishing are a normal part of a roller bearing's life cycle (i.e., routine maintenance), it cannot be said that grinding away the load bearing surfaces of the roller bearing and replacing the roller cages and rolling elements are a normal part of that life cycle. (When RPC's customers bring the non-functional bearings to RPC, they do not know whether the bearings can be salvaged at all.) This is to be contrasted with the shirts at issue in *Mechanics Laundry.* Shirts are

13. *See Allied Drum,* 561 S.W.2d at 325–26; *Schulte Oil,* 882 P.2d at 72.

14. *See Ruan Financial,* 976 F.2d at 456 (declining to find manufacturing where rebuilt tractors were not intended to compete with new articles). *Ruan Financial* did call into question the government's "intended to-compete-with-new test." *Id.* However, it seems that how well a remanufactured article compares with new articles of its kind is an important *factor* in determining whether production is occurring.

15. Another issue not discussed by the parties is that RPC is essentially recycling old roller bear-

ings. In *Mechanics Laundry,* 650 N.E.2d at 1230 n. 11, this Court stated, "If the equipment exemption is to be broadened to include recycling, ... such action must come from the Indiana General Assembly." That statement should not be read to establish a rule that using recycled materials in producing other tangible personal property disqualifies a taxpayer from receiving an industrial exemption. The exemption provisions reveal no legislative intent to discriminate between manufacturers who use recycled materials and those who use non-recycled materials.

bought with the expectation that they will be washed again and again. No such expectation attaches to the purchase of roller bearings.

■ An application of these four factors shows that, for purposes of the industrial exemptions, RPC's customers do *not* "get the same bearing they sent in...." (Rep't Br. at 7). The remanufactured roller bearing is a new product different from both the unusable roller bearing sent to RPC *and* the roller bearing as it was originally manufactured. *See Schulte Oil,* 882 P.2d at 72 (remanufactured item new and different from original). The remanufactured roller bearing functions *at least* as well as the original. It has been given completely new rolling elements and roller cages. It has been given new working surfaces, and as a result of the creation of new working surfaces, the remanufactured bearing has a different geometry from the original. Significant value has also been added to the roller bearing. Consequently, this Court finds that RPC substantially transforms the unusable roller bearings when it remanufactures them and thereby produces other tangible personal property.[16] In other words, a scarce economic good has been created.

This Court declines to find that RPC is only entitled to the industrial exemptions when it fabricates the new rolling elements and cages for the remanufactured bearings. The justification would be that the grinding and polishing do not, in and of themselves, constitute production. This would be flatly contrary to the teaching of *Cave Stone.* In *Cave Stone,* 457 N.E.2d at 524, the Indiana Supreme Court determined that the particular activity in question did not have to have a transformational effect. Rather, the activity had to be an integral part of the operation. *Id.* The relevant inquiry is not whether the grinding and polishing in and of themselves constitute production. Under *Cave Stone,* the proper analysis is whether the activity is an integral part of the creation of a product.

In this case, it is apparent that the grinding and polishing are an integral part of RPC's remanufacturing of the roller bearings. They are part of a continuous process by which the roller bearings are placed in their finished form ready for delivery to the customer. *See General Motors Corp.,* 578 N.E.2d at 404. Therefore, RPC is entitled to an exemption for equipment used and materials consumed in grinding and polishing the remanufactured roller bearings.[17]

---

16. It is important to note that in order for an activity to constitute the production of other tangible personal property that activity must be part of an integrated process that substantially transforms the component materials. However, the fact that component materials are transformed does not dictate a finding of production. *See, e.g., Anheuser–Busch Brewing Ass'n v. United States,* 207 U.S. 556, 562, 28 S.Ct. 204, 206, 52 L.Ed. 336 (1908) ("Manufacture implies a change, but every change is not manufacture ....") *quoted in Harlan Sprague Dawley,* 605 N.E.2d at 1225.

17. At oral argument, the Department pointed out that the parties had stipulated that the equipment used and the materials consumed in manufacturing the roller cages and the rolling elements (that were incorporated into the remanufactured roller bearings) were exempt. Consequently, in the Department's view, this Court may "focus on the inner and outer rings." (Oral Arg. Tr. at 19). The Department seems to be arguing that because RPC receives an exemption for part of its process the inquiry should be whether the grinding and polishing, standing alone, can qualify for an industrial exemption. As has been shown, this is contrary to *Cave Stone.* Under *Cave Stone,* the process as a whole must be examined; it cannot be artificially broken down into its component parts.

The issue to be decided here is whether remanufacturing of roller bearings *as a whole* constitutes production. Focusing on the rings would ignore the fact that the fabrication of the roller cages and the rolling elements is inextricably linked to the grinding of the rings. The grinding changes the distance between the rings, thereby altering the geometry of the roller bearing. The roller cages and rolling elements must be fabricated with regard to the altered geometry; otherwise they are useless. Moreover, focusing on the rings would detract from an evaluation of whether the remanufactured roller bearings constituted other tangible personal property for purposes of the industrial exemptions.

Properly understood, this will not lead to repairers who manufacture repair parts getting unintended industrial exemptions for repair work. The relevant inquiry still remains whether the taxpayer produces other tangible personal property. Although the fabrication of repair parts undoubtedly constitutes production, *see County of Chesterfield v. BBC Brown Boveri,* 238 Va. 64, 380 S.E.2d 890, 893 (1989), in order for the taxpayer to qualify for an exemption for his work on the repaired product, the repair work

■ Granting RPC an exemption for its remanufacturing activity also serves the legislative purposes of encouraging economic growth and avoiding tax pyramiding.[18] *See State ex rel. Clark v. Stout,* 206 Ind. 58, 187 N.E. 267, 268 (1933) (court may construe statute in harmony with legislative purpose where possible). RPC's customers (primarily steel and paper mills) manufacture products.[19] If RPC is taxed on the equipment and materials used, then it will likely pass on these costs to its customers who will in turn pass on the costs to the ultimate consumer. Of course, this Court recognizes that not every instance where tax pyramiding occurs requires the granting of an exemption. *See Mechanics Laundry,* 650 N.E.2d at 1230 ("[L]egislature did not intend to preclude *all* instances of tax pyramiding."). However, the existence of tax pyramiding is a relevant consideration so long as it serves the produc-

tion of scarce economic goods. *See id.* By remanufacturing roller bearings, RPC produces scarce economic goods, and this Court may properly consider the existence of tax pyramiding in arriving at its decision.

## CONCLUSION

Because RPC's remanufacturing of roller bearings constitutes production within the meaning of the equipment exemption and the consumption exemption, the equipment and materials used in that process are exempt from sales and use taxes.

---

must transform the repaired product into other tangible personal property. In cases where it does not, the production activity ends with the fabrication of the repair parts.

**18.** It also serves the related purpose of enhancing Indiana's competitive position with respect to other states. *See Schulte Oil,* 882 P.2d at 72.

**19.** The parties did not argue the applicability of IND.CODE ANN. § 6–2.5–5–4 (West 1989), which exempts tangible personal property used to make industrial machinery, tools, and equipment.