**INTERSTATE WAREHOUSING, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9806–TA–71.

Tax Court of Indiana.

Jan. 9, 2002.

Publication Ordered Feb. 28, 2002.

Craig R. Finlayson, Swift & Finlayson, Fort Wayne, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Interstate Warehousing, Inc. (Interstate) challenges the Indiana Department

of State Revenue's (Department) denial of a refund of sales and use tax in the amount of $91,566.85 paid during the 1993 to 1996 tax years. The Court restates Interstate's issue for review as whether Interstate's chilling of ammonia used to provide its customers with air conditioned storage units constitutes "direct production" of "other tangible personal property" for the purpose of Indiana Code § 6–2.5–5–5.1 (the consumption exemption).[1]

For the reasons stated below, the Court GRANTS Interstate's motion for summary judgment and DENIES the Department's cross motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

Interstate is an Indiana corporation that operates two refrigerated warehouse facilities in Indiana—one in Indianapolis and the other in Lafayette. Food manufacturers and retailers, such as Kroger, Marsh, and Nabisco, deliver frozen agricultural goods to Interstate's warehouses, where Interstate provides refrigerated storage areas to them. Interstate produces the conditioned air that is used in the refrigerated storage areas by chilling ammonia to −20° Fahrenheit using electrical compressors, refrigerant condensers, expansion valves, and evaporators. Chilling ammonia to that temperature changes it from a gas to a liquid.[2] The conversion of the gas ammonia to a liquid transforms the ammonia so that it is capable of cooling and conditioning the air in its customers' storage units.

The chilled ammonia is circulated through a closed loop cooling distribution system to chill the air in the storage rooms where Interstate's customers keep their perishable food items. When the temperature of the chilled refrigerant ammonia rises to 0°, it is returned through the same closed loop cooling distribution system to the compressors and condensers of the central refrigeration system. Upon receiving the warmed ammonia, Interstate re-chills it and sends it back through the closed loop system to its customers' storage areas.

Interstate charges its customers based on the temperature required to be maintained in the refrigerated storage area and the quantity of frozen food product delivered by the customer. Interstate purchased electricity from Indianapolis Power and Light to use in its Indianapolis facility and purchased electricity from PSI Energy to use in its Lafayette facility. The electricity consumed at the facilities was predominately used for the operation of closed loop refrigeration equipment that was used to chill the ammonia and produce the conditioned air.

From 1993 to 1996, Interstate paid $91,566.85 in sales and use taxes for electricity used in its Indianapolis and Lafayette facilities. Interstate sought a refund of those taxes pursuant to Indiana Code § 6–2.5–5–5.1, the consumption exemption,

1. Interstate also argued that it is entitled to an exemption of sales tax under Indiana Code § 6–2.5–4–5. (Pet'r Br. at 12–17.) Because this Court finds that Interstate is entitled to an exemption of sales tax under Indiana Code § 6–2.5–5–5.1, the Court will not address this other issue. *See infra.*

2. In its brief, Interstate states that the chilling of the ammonia changes it from a liquid to a gas. (Pet'r Br. at 3.) However, Interstate's designated evidence in support of its motion for summary judgment states that the ammonia is transformed from a gas into a liquid during the chilling process. (Pet'r Supplemental Affidavit of John V. Tippman, Sr. at 1.) The Court notes that Interstate's designated evidence is correct because chilling the ammonia refrigerant would change it from a gas into a liquid. *See* Michael J. Moran & Howard N. Shapiro, Fundamentals of Engineering Thermodynamics 514–19 (4th ed. 2000).

and the Department denied Interstate's refund claim.

Interstate filed this original tax appeal on June 25, 1998. Interstate then filed a motion for summary judgment. The Department filed its response opposing the summary judgment motion and made a cross motion for summary judgment in its favor. The Court heard oral arguments. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

 This Court reviews final determinations of the Department *de novo* and is not bound by either the evidence presented or issues raised at the administrative level. IND.CODE § 6–8.1–9–1(d); *see also Hall v. Dep't of State Revenue,* 720 N.E.2d 1287, 1289 (Ind.Tax Ct.1999). When a taxpayer claims entitlement to a tax exemption, the taxpayer bears the burden of showing that the terms of the exemption are met. *Mid–America Energy Resources, Inc. v. Indiana Dep't of State Revenue,* 681 N.E.2d 259, 261 (Ind. Tax Ct.1997), *review denied.* Exemption statutes are strictly construed against the taxpayer. *Id.* Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). *See also Salin Bancshares, Inc. v. Indiana Dep't of State Revenue,* 744 N.E.2d 588, 591 (Ind.Tax Ct.2000). Cross motions for summary

judgment do not alter this standard. *Salin,* 744 N.E.2d at 591.

### Discussion

Interstate argues that its purchase of electricity consumed in producing chilled ammonia that is used to condition air in its refrigerated storage units is exempt from sales taxes under Indiana Code § 6–2.5–5–5.1, the consumption exemption. The consumption exemption, also referred to as one of the industrial exemptions,[3] states:

> Transactions involving tangible personal property [4] are exempt from the state gross retail tax if the person acquiring the property acquires it for direct consumption as a material to be consumed in the direct production of other tangible personal property in the person's business of manufacturing, processing, refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture.

IND.CODE § 6–2.5–5–5.1(b). The Department argues that Interstate is not entitled to the exemption because Interstate does not engage in the production or processing of other tangible personal property and is merely providing a service.

 Production is broadly defined and focuses on the creation of a marketable good. *Mid–America Energy,* 681 N.E.2d at 262. *See also Indiana Dep't of State Revenue v. Cave Stone, Inc.,* 457 N.E.2d 520, 524–25 (Ind.1983) (finding production occurred where trucks used to transport crude stone from the quarry to the crusher because trucks were essential

---

**3.** The industrial exemptions "exempt from the sales tax certain purchases of tangible personal property used, consumed, or incorporated into other tangible personal property." *Harlan Sprague Dawley, Inc. v. Ind. Dep't of State Revenue,* 605 N.E.2d 1222, 1224 (Ind. Tax Ct.1992). Some other industrial exemptions include Indiana Code §§ 6–2.5–5–3 (the equipment exemption) and 6–2.5–5–6 (the incorporation exemption). *See Rotation Prod-*

*ucts Corp. v. Dep't of State Revenue,* 690 N.E.2d 795, 798 (Ind. Tax Ct.1998) (citing *Mid–America Energy Resources,* 681 N.E.2d at 261; *Harlan Sprague Dawley,* 605 N.E.2d at 1224).

**4.** "Tangible personal property" includes, among other things, electrical energy. IND. CODE § 6–2.5–5–5.1(a).

to creation of new marketable good, i.e., transformation of crude stone to aggregate stone); *Indianapolis Fruit Co. v. Dep't of State Revenue*, 691 N.E.2d 1379, 1385 (Ind. Tax Ct.1998) (finding production where taxpayer actively transformed unmarketable bananas into marketable ones); *Harlan Sprague Dawley, Inc. v. Ind. Dep't of State Revenue*, 605 N.E.2d 1222, 1223–24, 1228 (Ind. Tax Ct.1992) (finding production occurred where rats were bred in sterile and quarantined environment to create a new offspring with "particularized desired characteristics"); *cf. Mechanics Laundry & Supply, Inc. v. Ind. Dep't of State Revenue*, 650 N.E.2d 1223, 1228–29, 1231 (Ind. Tax Ct.1995) (finding no production occurred because taxpayer's act of cleaning a textile did not create a new marketable good but merely returned the textile to its original state). Production can occur through manufacturing, processing, or any other activity listed in the exemption. *Mid–America Energy*, 681 N.E.2d at 262 (citing *Cave Stone*, 457 N.E.2d at 524). However, when a good is not produced and a service is provided, it is proper to deny the exemption. *Mid–America Energy*, 681 N.E.2d at 263.

In *Mid–America Energy Resources*, this Court found that Mid–America was entitled to the consumption exemption on chemicals and steam service it purchased because its operation of chilling and treating water for the purpose of conditioning air in its customers' buildings constituted production of other tangible personal property. *Id.* at 264–65. Mid–America used compressors, a refrigerant condenser, expansion valves, and an evaporator to remove heat, a form of energy, from water to chill it to 40°. *Id.* at 260, 263. The chilled water was then pumped through a close loop system, where it was chemically treated, and used by Mid–America's customers to cool the air in their buildings. *Id.* When the water reached a temperature of

52°, it was returned to Mid–America through the same closed loop system. *Id.* at 260. Mid–America then re-chilled the water and sent it back out to its customers' buildings. *Id.* This Court found that the process of chilling the water created a significant change in the properties of the water and made it capable of cooling air in buildings. *Id.* at 263–64. The Court also found that Mid–America's "operation create[d] a new and marketable good, or in the language of the statute, produce[d] 'other tangible personal property.'" *Id.* at 263. Thus, because Mid–America was involved in the "direct production" of "other tangible personal property," it was entitled to the consumption exemption. *Id.* at 263–64.

■ Just like Mid–America, Interstate is involved in the direct production of other tangible personal property in its operation of producing conditioned air. Interstate uses compressors and condensers to remove heat, a form of energy, from ammonia to cool it to −20°. The conversion of gas ammonia to a chilled liquid ammonia transforms the ammonia so that it is capable of cooling the storage units of Interstate's customers. The chilled ammonia is circulated through a closed loop cooling distribution system to chill the air in the storage rooms where Interstate's customers kept their perishable food items. When the temperature of the chilled refrigerant ammonia rises to 0°, it is returned through the same closed loop cooling distribution system to the central refrigeration system. Upon receiving the warmed ammonia, Interstate re-chills it and sends it back through the closed loop system to its customers' storage areas.

Analogous to Mid–America, where the process of chilling water created a significant change in the properties of the water and made it capable of cooling air in its

customers' buildings, Interstate's processing of chilling ammonia created a significant change in the ammonia and made it capable of cooling air in its customers' storage units. *See Id.* at 263. The chilling of the ammonia placed it in a form substantially different from that in which it was acquired. *See Indianapolis Fruit,* 691 N.E.2d at 1385 (citing IND. ADMIN.CODE tit. 45, r. 2.2–5–10(k)). Interstate's operation created a new and marketable good. *See Mid–America,* 681 N.E.2d at 263. Because Interstate consumed electricity in the direct production of other tangible personal property, it is entitled to the consumption exemption.

Finally, the Department's attempt to analogize this case to *Mechanics Laundry* and *Indianapolis Fruit* is without merit. In those cases, the taxpayers sought the equipment exemption for equipment used to act upon other goods. In *Mechanics Laundry,* the taxpayer sought the exemption for equipment used to launder soiled textiles. *Mechanics Laundry,* 650 N.E.2d at 1227. This Court found that laundering soiled textiles did not produce other tangible personal property. *Id.* at 1229. "In [*Mechanics Laundry* ], this Court distinguished the production of a marketable good from the perpetuation of a previously manufactured good." *Mid–America,* 681 N.E.2d at 263 (citing *Mechanics Laundry,* 650 N.E.2d at 1230).

In *Indianapolis Fruit,* the taxpayer sought the exemption for equipment used to ripen bananas and tomatoes. *Indianapolis Fruit,* 691 N.E.2d at 1382. In that case, the taxpayer actively ripened the bananas by introducing ethylene gas into the banana ripening booth. *Id.* at 1385–86. The taxpayer allowed the tomatoes to ripen by merely placing them in a tomato processing unit. *Id.* at 1382. This Court found that the taxpayer was entitled to the equipment exemption for the bananas be-cause the taxpayer had physically and chemically transformed the bananas from unmarketable bananas to marketable ones. *Id.* at 1381, 1385. The Court, however, found that the taxpayer's tomato ripening process did not constitute production because the taxpayer did not trigger the ripening process but merely passively allowed it to occur. *Id.* at 1385–86.

Here, the Department incorrectly focuses on whether there is a transformation of the food stored in Interstate's customers' refrigerated storage areas. Interstate is not seeking an exemption based upon a claim that the other tangible personal property it produces or transforms is the frozen food in its customers storage areas. Interstate is seeking a consumption exemption based on the electricity it consumed in producing chilled ammonia that was used to condition the air in its customers' storage areas. Therefore, the Department's argument is meritless.

## CONCLUSION

For the aforementioned reasons, this Court holds that, as a matter of law, that Interstate is entitled to a refund of sales and use tax under the consumption exemption. Therefore, this Court GRANTS Interstate's motion for summary judgment and DENIES the Department's cross motion for summary judgment.

## *ORDER*

Petitioner, Interstate Warehousing, Inc., by counsel, files its Verified Motion to Publish Memorandum Decision.

No response or objection has been filed by the Respondent.

The Court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Petitioner's "Verified Motion to Publish Memorandum Decision" is granted and this Court's opinion heretofore handed down in this cause on January 9, 2002, marked "Not For Publication" is now ordered published;