MECHANICS LAUNDRY & SUPPLY, INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9212–TA–00109.

Tax Court of Indiana.

May 11, 1995.

---

1224

Lawrence A. Jegen, III, Indianapolis, Jay D. McShurly, Somerset, KY, for petitioner.

Pamela Carter, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Mechanics Laundry and Supply, Inc. (Mechanics Laundry) appeals the Indiana Department of State Revenue's (the Department) denial of its claim for refund of Indiana State Gross Retail and Use Taxes (sales taxes) for 1989.

## ISSUES

At issue is whether Mechanics Laundry's purchases of: 1) cleaning supplies and products,[1] 2) machinery and equipment,[2] 3) utilities,[3] 4) repair parts,[4] and 5) EPA compliance items [5] are exempt from the sales tax under:

I. IND.CODE 6-2.5-5-3, the equipment exemption;

II. IND.CODE 6-2.5-5-5.1, the consumption exemption;

III. IND.CODE 6-2.5-5-6, the incorporation exemption;

IV. IND.CODE 6-2.5-5-30, the environmental quality exemption.[6]

Also at issue is:

V. Whether the Department failed to rely on previously stated, ascertainable standards when it denied Mechanics Laundry's claim for refund and thereby violated Mechanics Laundry's constitutional right to due process under the Fifth and Fourteenth Amendments of the United States Constitution.

1. Cleaning supplies and products include but are not limited to cleaning solutions, dyes, color enhancers, starches, and water.

2. Machinery and equipment include but are not limited to laundry carts, conveyer lines, compressors, boilers, bagging apparatuses, sewing machines, threads, and pneumatic air hoses.

3. Utilities include water, gas and electricity.

4. Repair parts include but are not limited to fuses, gaskets, motors, electrical control panels, and belts.

5. EPA compliance items include but are not limited to waste water treatment equipment, parts to repair waste water treatment equipment, acids, limes, and other chemicals injected into waste water treatment equipment.

## MECHANICS LAUNDRY'S BUSINESS OPERATIONS

Mechanics Laundry is in the business of renting clean textiles including uniform apparel, walk-off mats, shop rags, table linens, bed sheets, and roll towels. Its customers include businesses such as garages, restaurants, and hotels, whose activities typically cause textiles to become heavily soiled. Mechanics Laundry operates ten plants in Indiana at which it performs three main activities: 1) the preparation of uniform apparel for rental, 2) the laundering of soiled textiles for re-rental, and 3) the decontamination of waste water resulting from the laundering of soiled textiles in order to make that water acceptable for release into municipal sewer systems.

The preparation of uniform apparel for rental is a multi-staged activity. First, Mechanics Laundry selects from its inventory the uniform apparel that each customer requires. Then, it tailors each garment to fit the person who will wear it. Next, it designs, sews, and affixes to the uniform apparel various logos and name tags. Finally, Mechanics Laundry places the uniform apparel in plastic garment bags and loads the uniform apparel onto trucks for delivery to customers.

The laundering of soiled textiles is also a multi-staged activity. To insure that its customers have a continuous supply of clean textiles, Mechanics Laundry periodically delivers clean textiles to, and picks up soiled

6. Although Mechanics Laundry did not assert a claim under I.C. 6-2.5-5-30 in its complaint, Mechanics Laundry asserted a claim under I.C. 6-2.5-5-30 in its pretrial list of contentions. *Petitioner's List of Contentions* at 5 (filed May 5, 1993); *Petitioner's First List of Contentions* at 14 (filed April 16, 1994). In addition, Mechanics Laundry offered evidence at trial to support its claim under I.C. 6-2.5-5-30, *Trial Transcript* at 50-53, 61-64, and the Department had an opportunity to rebut Mechanics Laundry's claim. *Respondent's Brief in Support of its Proposed Findings of Fact and Conclusions of Law* at 5; *Respondent's Reply Post Trial Brief* at 7-8. Accordingly, the court will treat Mechanics Laundry's claim under I.C. 6-2.5-5-30 as if it had been raised in its complaint. *See* Ind.Trial Rule 15(B); *Weisman v. Hopf-Himsel, Inc.* (1989), Ind.App., 535 N.E.2d 1222, 1231.

textiles from, its customers. When soiled textiles are returned to Mechanics Laundry, they are washed, dried, and pressed. Any damaged textiles are mended and repaired. Then, cleaned and repaired textiles are placed in plastic bags and loaded onto trucks for re-delivery to customers.

The decontamination of waste water is a multi-staged activity, as well. First, Mechanics Laundry routes waste water from its industrial washing machines into waste water treatment equipment. Then, Mechanics Laundry injects various chemicals and acids into the waste water treatment equipment. The chemicals and acids cause contaminants in the water to sink and form a sludge at the bottom of the waste water treatment equipment. Finally, the cleaned water is separated from the sludge and released into municipal sewer systems.

## PROCEDURAL HISTORY

On September 1, 1992, Mechanics Laundry filed a claim for refund of sales taxes paid in 1989 in the amount of $131,900.43. In its claim for refund, Mechanics Laundry asserted that the preparation of uniform apparel and the laundering of soiled textiles constituted "processing" tangible personal property within the meaning of I.C. 6–2.5–5–3, 6–2.5–5–5.1, and 6–2.5–5–6.[7] Therefore, Mechanics Laundry claimed, many of its purchases were exempt from the sales tax. On September 21, 1992, the Department denied Mechanics Laundry's claim for refund on the ground that Mechanics Laundry was not engaged in "production." On December 17, 1992, Mechanics Laundry filed this appeal.

## DISCUSSION AND ANALYSIS

### Standard of Review

"The court reviews appeals from the Department *de novo.*" *Kenny Kent Chevrolet Co. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 627 N.E.2d 890, 891. It is bound by neither the issues nor the evidence presented at the administrative level. *Id.* When a taxpayer claims entitlement to a tax exemption, the taxpayer bears the burden of showing that the terms of the exemption are met. *Indiana Bell Telephone Co. v. Indiana Dep't of State Revenue* (1994), Ind. Tax, 627 N.E.2d 1386, 1387. The burden is a difficult one, for ambiguities in exemption statutes are strictly construed against the taxpayer. *See General Motors Corp. v. Indiana Dep't of Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 404, *aff'd* (1992), Ind., 599 N.E.2d 588. Nevertheless, exemption statutes are not to be construed so narrowly as to defeat the legislature's purpose in enacting them. *Id.*

### I. The Equipment Exemption

Mechanics Laundry contends that when it prepares uniform apparel and launders soiled textiles it is engaged in "processing ... other tangible personal property" within the meaning of I.C. 6–2.5–5–3, the equipment exemption. The equipment exemption provides:

> Transactions involving manufacturing machinery, tools, and equipment are exempt from the state gross retail tax if the person acquiring that property acquires it for direct use in the direct production, manufacture, fabrication, assembly, extraction, mining, *processing,* refining, or finishing of *other tangible personal property.*

I.C. 6–2.5–5–3 (emphases added). Because "processing" is not defined in I.C. 6–2.5–5–3, Mechanics Laundry urges this court to construe the word "processing" in accord with its common dictionary definition. Mechanics Laundry offers several definitions of the word "processing" as found in various dictionaries. *Petitioner's Exhibit 1* at 18–27. The Department, however, contends that in the context of the equipment exemption, the

7. Mechanics Laundry's claim for refund was also based on IND.CODE 6–2.5–5–4 and IND.CODE 6–2.5–5–8. Mechanics Laundry, however, presented no evidence that it directly produces any of the machinery, tools, or equipment it uses in its laundry operation. Further, Mechanics Laundry made no mention of I.C. 6–2.5–5–4 in its post trial brief. Consequently, the court determines that I.C. 6–2.5–5–4 is not at issue in this case. Likewise, I.C. 6–2.5–5–8 is not at issue in this case, for the Department does not contest that Mechanics Laundry's initial purchase of textiles is exempt from the sales tax under I.C. 6–2.5–5–8. *Respondent's Brief in Support of Its Proposed Findings of Fact and Conclusions of Law* at 6 and 16.

word "processing" has meaning only to the extent that "production" occurs.[8]

When the meaning of a statute's language is reasonably susceptible to more than one interpretation, the court turns to the rules of statutory construction for guidance in construing the statute. *Johnson County Farm Bureau Coop. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580, *aff'd* (1992), Ind., 585 N.E.2d 1336. One rule of statutory construction is that words and phrases are to be given their plain, ordinary, and usual meaning. IND. CODE 1–1–4–1(1); *Johnson County Farm Bureau*, 568 N.E.2d at 581. The plain, ordinary, and usual meaning of a word is usually found in a dictionary. *See id.* The question whether Mechanics Laundry is engaged in "processing" within the meaning of the equipment exemption, however, cannot be answered merely by looking to the dictionary, for the goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* at 580. When the legislature's intent reveals that a word is used in a manner different from its common dictionary definition, the common dictionary definition must be disregarded. *Id.* at 581.

Mechanics Laundry advances four arguments to support its claim that it is entitled to the equipment exemption. First, Mechanics Laundry argues that one can be engaged in "processing" within the meaning of the equipment exemption without being engaged in "production." Specifically, Mechanics Laundry asserts that because the terms "production," "manufacture," "fabrication," "assembly," "extraction," "mining," "processing," "refining," and "finishing" are separated by commas, the correct "grammatical interpretation" requires that they be viewed as separate and distinct—not linked to production.

When the meaning of a statute is in doubt, a court may apply the rules of grammar to interpret the statute. *Leehaug v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 583 N.E.2d 211, 212. Nevertheless, considerations of grammatical and rhetorical usage are not controlling when the legislative purpose reveals a contrary intent. *Hill v. State* (1986), Ind., 488 N.E.2d 709, 710. Likewise, considerations of grammatical and rhetorical usage are not controlling when our supreme court has already provided guidance on the interpretation of a statute.

In the case of the equipment exemption, our supreme court has held that the terms used are not separate and distinct. *Indiana Department of State Revenue v. Cave Stone, Inc.* (1983), Ind., 457 N.E.2d 520. Indeed, the supreme court stated that the terms used "are not mutually exclusive; ... [rather, they] overlap and at times encompass each other." *Id.* at 524. The supreme court even employed the terms "interchangeably without using any separate definitions." *Harlan Sprague Dawley Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1226.

Most significant, however, is the fact that our supreme court held that the terms used in the equipment exemption statute provide a "comprehensive description of the various means of *production*" and "circumscribe[ ] all of the operations or processes by which [a] finished product is derived." *Cave Stone*, 457 N.E.2d at 524 (emphasis added). Accordingly, there can be production by the means of manufacture, production by the means of fabrication, production by the means of processing, and so forth. The terms used, therefore, have meaning only to the extent that there is production. Indeed, in enacting the equipment exemption, it was the legislature's intent to "encourage industrial growth by allowing an exemption for items closely connected with the *production of goods.*" *General Motors*, 578 N.E.2d at 404 (emphasis in original) (quoting *Indiana Dep't of State Revenue v. Indiana Harbor Belt R.R. Co.* (1984), Ind.App. 460 N.E.2d 170, 175); *Harlan Sprague Dawley*, 605 N.E.2d at 1228. Without the production of goods or, to use the language of the statute, "other tangible personal property," the equipment exemption does not apply. *Cave*

---

**8.** The parties offer the same arguments with respect to the consumption, incorporation, and en- vironmental quality exemptions.

*Stone*, 457 N.E.2d 520. *See also Indiana Waste Systems of Indiana, Inc. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 633 N.E.2d 359, 363 (petitioner's equipment transported and compressed garbage, but was not used by petitioner in an overall process directed to the production of "other tangible personal property"); *Faris Mailing, Inc. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 480, 483 (petitioner's equipment was not used to produce "other tangible personal property," but to make the provision of petitioner's service more efficient).

Second, Mechanics Laundry argues that because it acquires soiled textiles from its customers and changes them into cleaned textiles, it is engaged in "processing" within the Department's own regulations. 45 I.A.C. 2.2–5–10(k) provides:

> Processing ... is defined as the performance by a business of an integrated series of operations which *places tangible personal property in a form, composition, or character different from that in which it was acquired. The change in form, composition, or character must be a substantial change.* Operations such as distilling, brewing, pasteurizing, electroplating, galvanizing, anodizing, impregnating, cooking, heat treating, and slaughtering of animals for meal or meal products are illustrative of the types of operations which constitute processing ... although any operation which has such a result may be processing.... A processed ... *end product, however, must be substantially different from the component materials used.*

(Emphases added).

■ Mechanics Laundry does not place tangible personal property in a form, composition, or character substantially different from that in which it was *acquired.* Mechanics Laundry acquires *clean* textiles from its suppliers.[9] The laundering of textiles merely returns the textiles to the same form and causes them to have the same character or composition that they had when they were acquired. Moreover, the laundering of soiled textiles does not result in an "end product" that is "substantially different from the component materials used." 45 I.A.C. 2.2–5–10(k). A shirt remains a shirt even though it is cleaned.

Third, Mechanics Laundry argues that if "processing" requires "production," it is engaged in "production." Mechanics Laundry notes that our supreme court, in order to ensure that the equipment exemption was not improperly narrowed, adopted an expansive definition of the term "production", holding that "[i]n an economic sense, production includes all activity directed to increasing the number of scarce economic goods." *Cave Stone*, 457 N.E.2d at 524. Relying on this definition, Mechanics Laundry asserts that the laundering of soiled textiles constitutes "production" because if soiled textiles are "not cleaned, [via] ... processing, but [are] disposed of after each use, there would be an obvious economic cost for the acquisition of replacement [textiles] ..., and such economic cost would have a direct impact on the number of scarce economic goods." *Petitioner's Reply to Respondent's Post Trial Brief* at 18–19.

■ The supreme court adopted an expansive definition of "production" to ensure that all equipment used in an integral step in the overall production process would qualify for the exemption, regardless of whether that equipment actually effected a change or transformation on the goods or other tangible personal property being produced. *Cave Stone*, 457 N.E.2d 520. The supreme court's expansive definition of "production," however, in no way negates the requirement that the overall production process, whether it be termed "processing" or otherwise, must result in the production of goods or other tangible personal property. Thus, despite Mechanics Laundry's attempt to explain its operation in a manner that conforms to the supreme court's definition of "production," the laundering of soiled textiles does not constitute "production." Indeed, Mechanics Laundry does not produce goods or items of tangible personal property. Rather, Me-

---

9. While Mechanics Laundry insists that it acquires soiled textiles from its customers approximately 52 times per year, Mechanics Laundry acquires its textiles only once—when it purchases them from its suppliers. *See* I.C. 6–2.5–5–8.

chanics Laundry provides goods or items of tangible personal property (specifically clean textiles) to its customers on a periodic basis. Its washing machines, driers, and other equipment are not used in an overall process directed to the production of textiles. They are used to perpetuate textiles that were produced by others. *See Undercofler v. Macon Linen Service, Inc.* (1966), 114 Ga.App. 231, 241, 150 S.E.2d 703, 709 (laundering textiles did not constitute the "processing of a product" for the textiles had already come into existence by "processing, manufacture or conversion" before they were sold to the textile rental business).[10]

In this day of concern for the environment, cleaning soiled textiles so that they may be used again, rather than thrown away, is a laudable activity. It is not, however, an activity that the legislature contemplated would be eligible for the equipment exemption. Under Indiana law a statute must not be construed so narrowly that it does not give effect to the legislative intent. *General Motors,* 578 N.E.2d at 404. The corollary, however, is also true; statutes must not be construed so broadly so as to go beyond the legislative intent. The legislature intended that the equipment exemption be available to those who are engaged in the production of goods or other tangible personal property only. *Id.*[11]

While the laundering of soiled textiles does not constitute the production of goods or other tangible personal property, the parties, by joint stipulation, agree that Mechanics Laundry "produces or manufactures" over 90 percent of the logos and name *Petitioner's Exhibit 1* at 14–15, ¶ 59, ¶ 60 & ¶ 62. Thus, Mechanics Laundry's purchases of "manufacturing machinery, tools, and equipment" used to produce logos and name

tags are exempt from the sales tax under I.C. 6–2.5–5–3. *See generally Unitog Rental Services, Inc. v. Director of Revenue* (1989), Mo., 779 S.W.2d 568, 569 (label-making machine and label-sealing machine qualified for exemption).

Finally, Mechanics Laundry notes that the legislature enacted the equipment exemption to prevent tax pyramiding. *See General Motors,* 578 N.E.2d at 405. Mechanics Laundry then explains that if it is required to pay sales tax on the purchase of equipment used in its laundry operations, it will pass that tax along to its customers as a cost of doing business. The result, Mechanics Laundry argues, is tax pyramiding, and the existence of tax pyramiding establishes that it is entitled to the equipment exemption.

While the legislature did enact the equipment exemption, at least in part, to prevent increases in the cost of goods due to tax pyramiding, *Id.,* the legislature did not intend to preclude *all* instances of tax pyramiding. It meant to preclude only those instances of tax pyramiding that would result if equipment purchased in order to facilitate the "production of goods" was subject to the sales tax. *See General Motors,* 578 N.E.2d at 404. Just as the term "processing" has meaning only to the extent that there is production, the legislature's purpose to prevent tax pyramiding extends only so far as there is production. Where there is no production of goods or other tangible personal property, the legislature's purpose to prevent tax pyramiding in the price of goods that are produced does not apply.

## II. The Consumption Exemption

Mechanics Laundry contends that when it prepares uniform apparel and launders soiled

---

10. The court recognizes that the Ohio statutory definition of the term "processing" encompasses the laundry operations of textile rental businesses. *Van Dyne Crotty Co. v. Limbach* (1990), 53 Ohio St.3d 3, 558 N.E.2d 44. As explained above, however, the term "processing" under Indiana law has meaning only to the extent that goods or items of other tangible personal property are produced. I.C. 6–2.5–5–3; *Cave Stone,* 457 N.E.2d at 520; *Indiana Waste Systems,* 633 N.E.2d at 359; *General Motors,* 578 N.E.2d 399; *Faris Mailing,* 512 N.E.2d at 480.

11. If the equipment exemption is to be broadened to include recycling, as perhaps it should be, such action must come from the Indiana General Assembly. Likewise, if the exemptions at issue today are to be broadened to account for the much publicized shift from a manufacturing economy to a service or information economy, such action must also come from the Indiana General Assembly.

textiles it is engaged in "processing" "other tangible personal property" within the meaning of I.C. 6–2.5–5–5.1, the consumption exemption. The consumption exemption provides:

> Transactions involving tangible personal property [including electrical energy, natural or artificial gas, water, steam and steam heat] are exempt from the state gross retail tax if the person acquiring the property acquires it for direct consumption as a material to be consumed in the *direct production of other tangible personal property* in the person's business of manufacturing, *processing,* refining, repairing, mining, agriculture, horticulture, floriculture, or arboriculture.

I.C. 6–2.5–5–5.1 (emphases added).

■ The express language of I.C. 6–2.5–5–5.1 requires that one must be engaged in the production of tangible personal property in order to receive the consumption exemption. Indeed, the consumption exemption is available only to persons who consume tangible personal property "in the *direct production of other tangible personal property* in the person's business of manufacturing, processing. . . ." I.C. 6–2.5–5–5.1 (emphasis added). *See also Faris Mailing,* 512 N.E.2d at 483 (" 'production of other tangible personal property' is required").

■ Because the laundering of soiled textiles does not constitute the production of goods or other tangible personal property, Mechanics Laundry is not entitled to the consumption exemption so far as the laundering of soiled textiles is concerned. The parties agree, however, that Mechanics Laundry is engaged in the "production or manufacture" of logos and name tags. *Petitioner's Exhibit 1* at 14–15, ¶ 59, ¶ 60 & ¶ 62. Accordingly, Mechanics Laundry is entitled to the consumption exemption to the extent that it directly consumes tangible personal property in the direct production of logos or name tags.

**III.  The Incorporation Exemption**

Mechanics Laundry contends that when it prepares uniform apparel and launders soiled textiles, it "processes" "other tangible personal property" within the meaning of I.C. 6–2.5–5–6, the incorporation exemption. The incorporation exemption provides:

> Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for incorporation as a material part of other tangible personal property which the purchaser manufactures, assembles, refines, or *processes* for sale in his business.

I.C. 6–2.5–5–6 (emphases added).

■ At the time of the *Cave Stone* decision, the incorporation exemption was contained in the same statute as the equipment and consumption exemptions. IND.CODE 6–2–1–39 (repealed, now see I.C. 6–2.5–5–3, 5.1 & 6); *Harlan Sprague Dawley,* 605 N.E.2d at 1227. In addition, the incorporation exemption covered the same subject matter, used the same language to list the exemption provisions,[12] and was motivated by the same legislative intent as the equipment and consumption exemptions. *Id.* Accordingly, this court applies *Cave Stone's* overlapping definitions of the terms used in the equipment exemption and *Cave Stone's* expansive definition of "production" to the incorporation exemption. *Id.* As explained above, the term "processing," as it is used in the equipment and consumption exemptions, has meaning only to the extent that there is production of goods or other tangible personal property. The incorporation exemption is, therefore, also premised on the production of goods or other tangible personal property. Moreover, the incorporation exemption is applied by 45 I.A.C. 2.2–5–14. The regulation provides:

> The exemption provided by this regulation . . . applies only to tangible personal property to be incorporated as a material or an integral part into *tangible personal property produced for sale by a purchaser* en-

---

**12.** Although the incorporation exemption uses the term "processes" and the equipment and consumption exemptions use the term "processing," it is a difference without distinction. Indeed, the terms "processes" and "processing" are forms of the verb "process." *See Petitioner's Exhibit 1* at 20.

gaged in the business of manufacturing, assembling, refining or *processing.*

45 I.A.C. 2.2–5–14(b) (emphases added). The regulation affirms the fact that the incorporation exemption is available only to those who produce tangible personal property.

Since the laundering of soiled textiles does not constitute the production of goods or other tangible personal property, Mechanics Laundry is not entitled to the incorporation exemption so far as the laundering of soiled textiles is concerned. The parties agree, however, that Mechanics Laundry is engaged in the "production or manufacture" of logos and name tags. *Petitioner's Exhibit 1* at 14–15, ¶ 59, ¶ 60, & ¶ 62. Accordingly, Mechanics Laundry is entitled to the incorporation exemption to the extent that it directly consumes tangible personal property in the direct production of logos and name tags.

IV. The Environmental Quality Exemption

Finally, Mechanics Laundry contends that the preparation of uniform apparel and the laundering of soiled textiles constitutes "processing" within the meaning of I.C. 6–2.5–5–30, the environmental quality exemption. The environmental quality exemption provides:

Sales of tangible personal property are exempt from the state gross retail tax if:

(1) the property constitutes, is incorporated into, or is consumed in the operation of, a device, facility, or structure predominantly used and acquired for the purpose of complying with any state, local, or federal environmental quality statutes, regulations, or standards; and

(2) the person acquiring the property is engaged in the business of manufacturing, *processing,* refining, mining, or agriculture.

I.C. 6–2.5–5–30 (emphasis added).

■■■ "Where words are used at one place in an Act, they will be construed as used in the same sense at other places in the Act, unless the clear context of the statute requires a different meaning." *State ex rel Gary Taxpayers' Assoc. v. Lake Superior Court* (1947), 225 Ind. 478, 490, 76 N.E.2d 254, 260. Further, when considering two or more statutes that relate to the same general subject matter, the court will read those statutes *in pari materia* and construe them together so as to produce a harmonious system. *Harlan Sprague Dawley,* 605 N.E.2d at 1225.

The environmental quality exemption is part of the same act in which the equipment, consumption, and incorporation exemptions are found. In addition, the language of the environmental quality exemption is nearly identical to the language used in the equipment, consumption, and incorporation exemptions. All four statutes list a variety of means by which goods or other tangible personal property can be produced or derived, and all four statutes contain the term "processing" or "processes." Moreover, all four statutes are exemption statutes and set forth the circumstances under which a person is entitled to an exemption from the sales tax. Consequently, nothing about the environmental quality exemption suggests that the term "processing" has a different meaning from the term "processing" or "processes" as used in the equipment, consumption, and incorporation exemptions. The environmental quality exemption must, therefore, be construed in harmony with the equipment, consumption, and incorporation exemptions. *See id.* Accordingly, the term "processing," as it is used in the environmental quality exemption, has meaning only to the extent that goods or items of other tangible personal property are produced.

■■ The parties have stipulated that Mechanics Laundry is engaged in the "production or manufacture" of logos and name tags. That fact does not, however, establish that Mechanics Laundry is entitled to receive the environmental quality exemption for its purchases of EPA compliance items. The evidence presented establishes that Mechanics Laundry operates its waste water treatment equipment in connection with the laundering of soiled textiles, but not in connection with the production of logos and name tags. Consequently, Mechanics Laundry is not entitled to receive the environmental quality exemption for its purchases of EPA compliance items.

### V. Ascertainable Standards

Mechanics Laundry asserts that the Department failed to rely on previously stated, ascertainable standards when it denied Mechanics Laundry's claim for refund, and thereby violated its constitutional right to due process under the Fifth and Fourteenth Amendments of the United States Constitution. The Department denied Mechanics Laundry's claim for refund on the ground that Mechanics Laundry was not engaged in "production."

It is a common law rule of administrative law in Indiana that administrative decisions must be in accord with previously stated, ascertainable standards. *Podgor v. Indiana University* (1978) Ind.App., 178 Ind. App. 245, 258, 381 N.E.2d 1274, 1283; *Harlan Sprague Dawley*, 605 N.E.2d at 1232, n. 9. The purpose of the "ascertainable standards" rule "is to make certain that administrative decisions are fair, orderly and consistent, rather than irrational and arbitrary." *Podgor*, 178 Ind.App. at 258, 381 N.E.2d at 1283. The "ascertainable standards" rule is satisfied, at least in part, when standards are written with sufficient precision to give fair warning as to what factors an agency will consider in making an administrative decision. *Id.* "[T]he standards should [also] be readily available to those having potential contact with the administrative body." *Id.*

The exemption statutes at issue today are premised on the production of goods or other tangible personal property and the word "processing" has meaning only to the extent that there is production. The Department, in focusing on whether Mechanics Laundry was engaged in production, relied on a standard established not only by the language of the exemption statutes themselves, but by case law as well. Accordingly, there was no violation of the "ascertainable standards" rule.

### CONCLUSION

The laundering of soiled textiles does not constitute the "processing" or production of goods or other tangible personal property. Indeed, "the function of a laundry is to make clothes clean, rather than to make clean clothes." *Pellerin Laundry Machinery Sales Co. v. Cheney* (1963), 237 Ark. 59, 65, 371 S.W.2d 524, 527. Consequently, Mechanics Laundry is not entitled to any of the claimed exemptions with respect to the laundering of soiled textiles.

As stipulated by the parties, however, Mechanics Laundry is engaged in the "production or manufacture" of logos and name tags. Therefore, Mechanics Laundry is entitled to exemptions under I.C. 6–2.5–5–3, the equipment exemption, I.C. 6–2.5–5–5.1, the consumption exemption, and I.C. 6–2.5–5–6, the incorporation exemption, for qualifying purchases related to the production of logos and name tags.[13] Accordingly, the Department's final determination of September 21, 1992, is AFFIRMED in part and REVERSED in part.

---

13. Of course, Mechanics Laundry is entitled to only one exemption per purchase. Mechanics Laundry may not recoup more sales tax than it actually paid.