WHITE RIVER ENVIRONMENTAL
PARTNERSHIP, Petitioner,

v.

DEPARTMENT OF STATE REVENUE,
Respondent.

No. 49T10–9605–TA–00048.

Tax Court of Indiana.

May 15, 1998.

John M. Davis, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

White River Environmental Partnership (WREP) appeals a final determination of the Department of State Revenue (Department) denying it a sales and use tax exemption for chemicals and materials consumed in its wastewater treatment process during 1994 and 1995. The issue to be decided is whether the treatment of wastewater constitutes production for purposes of the sales and use tax exemptions.

## FACTS AND PROCEDURAL HISTORY

WREP operates two advanced wastewater treatment facilities in Indianapolis. The facilities turn wastewater (including raw sewage) into clean water that meets the applicable Federal and State environmental standards for discharge into the White River.

WREP's wastewater treatment process is quite involved. When the wastewater enters the facility, WREP adds certain chemicals to the wastewater to control odors and to coagulate the solids. Then the wastewater undergoes a grit removal treatment. This removes materials such as plant matter and egg shells. The wastewater then undergoes primary sedimentation. This process removes the larger solids from the wastewater. (The solids that are removed in this process are further processed in a dewatering facility; ultimately, all solids removed from the wastewater are either incinerated or taken to landfills.) The wastewater then proceeds to a secondary treatment where the wastewater is aerated. The aeration allows bacteria and other small organisms to attack the remaining smaller solids. From there, the wastewater moves on to a final clarifier where it is disinfected and then discharged into the White River.

On January 12, 1996, WREP filed a claim for refund from the Department for sales and use taxes paid on chemicals and materials consumed during the processing of the wastewater in 1994 and 1995. On February 16, 1996, the Department denied the refund claim. On May 6, 1996, WREP filed this original tax appeal. The parties filed cross motions for summary judgment, and on August 11, 1997, this Court heard argument on

those motions. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court reviews the Department's final determinations de novo and is bound by neither the evidence nor the issues raised at the administrative level. *See* IND. CODE ANN. § 6–8.1–9–1(d) (West Supp.1997); *Indianapolis Fruit Co. v. Department of State Revenue,* 691 N.E.2d 1379, 1382 (Ind. Tax Ct.1998). Summary judgment is only appropriate when no genuine issue of material facts exists. *See* IND. T.R. 56(C); *Roehl Transp., Inc. v. Department of State Revenue,* 653 N.E.2d 539, 541 (Ind. Tax Ct.1995). Cross motions for summary judgment do not alter this standard. *See Roehl Transp.,* 653 N.E.2d at 541.

### Discussion

Indiana imposes an excise tax (gross retail or sales tax) on retail transactions in Indiana. *See* IND.CODE ANN. § 6–2.5–2–1 (West 1989). Indiana also imposes a complementary excise tax (use tax) on tangible personal property stored, used, or consumed in this state. *See id.* § 6–2.5–3–2 (West Supp.1997); *Indianapolis Fruit Co.,* 691 N.E.2d at 1383; *see also USAir, Inc. v. Department of State Revenue,* 623 N.E.2d 466, 468–69 (Ind. Tax. Ct.1993) (discussing complementary sales and use taxes). There are a variety of exemptions from these complementary taxes.[1] *See* IND.CODE ANN. §§ 6–2.5–5–1 to –38.2 (West 1989 & Supp.1997). WREP contends that chemicals and materials it consumed in its wastewater treatment process are exempt from sales and use tax under section 6–2.5–5–5.1 (the consumption exemption) and section 6–2.5–5–30 (the environmental quality exemption). The statutes provide in relevant part:

> Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for direct consumption as a material to be consumed in the direct production of other tangible personal property in the person's business of manufacturing, processing, refining, repairing, mining,

agriculture, horticulture, floriculture, or arboriculture....

*Id.* § 6–2.5–5–5.1(b) (West Supp.1997).

Sales of tangible personal property are exempt from the state gross retail tax if:

> (1) the property constitutes, is incorporated into, or is consumed in the operation of, a device, facility, or structure predominantly used and acquired for the purpose of complying with any state, local, or federal environmental quality statutes, regulations, or standards; and

> (2) the person acquiring the property is engaged in the business of manufacturing, processing, refining, mining, or agriculture.

*Id.* § 6–2.5–5–30.

■ These exemptions, like all tax exemptions in Indiana, are strictly construed against the taxpayer, *see Sony Music Entertainment, Inc. v. State Bd. of Tax Comm'rs,* 681 N.E.2d 800, 801 (Ind. Tax Ct.1997), *review denied,* and the taxpayer bears the burden of showing entitlement to the exemption. *See id.* However, the policy of strict construction of exemption provisions does not mean that the Court will read them so narrowly that the Court undermines the legislative purpose and intent in enacting those provisions. *See Rotation Prods. Corp. v. Department of State Revenue,* 690 N.E.2d 795, 798 (Ind. Tax Ct.1998).

As the case law makes clear, both the exemption provisions at issue in this case require the taxpayer to engage in production before receiving an exemption. *See Mechanics Laundry & Supply, Inc. v. Department of State Revenue,* 650 N.E.2d 1223, 1231–32 (Ind. Tax Ct.1995). In *Mechanics Laundry,* this Court explained that the terms listed in the exemption provisions, i.e., processing, manufacturing, etc., "have meaning only to the extent that there is production." *Id.* at 1228. If there is no production of goods, the exemption provisions at issue do not apply. *Id. See also Indianapolis Fruit Co.,* 691 N.E.2d at 1384 ("[T]here is one iron-clad rule: without production there can be no exemption."). Therefore, WREP's entitle-

1. The gross retail tax exemptions in chapter 6–2.5–5 of the Indiana Code apply to the tax imposed by section 6–2.5–3–2. *See* IND.CODE ANN. § 6–2.5–3–4(a)(2) (West 1989).

ment to a sales and use tax exemption rests not on whether wastewater treatment can be called processing, but rather whether WREP is engaged in the production of goods.

WREP contends that it is engaged in production within the meaning of the exemption provisions. In support of this contention, WREP points to the fact that the wastewater treatment process makes clean water, which may be used for irrigation, ash, which may be used for making brick and a low grade type of concrete, and sludge, which may be used as fertilizer, from wastewater. WREP also supports its contention by arguing that its wastewater treatment process works a substantial change in the wastewater it receives.

■ The Court agrees that WREP's wastewater treatment process works a substantial change in the wastewater because it places the wastewater it receives in a "form, composition, or character substantially different from that in which it was acquired." IND. ADMIN. CODE tit. 45, r. 2.2–5–10(k) (1996). Removing the solids from the wastewater "creates a significant change" in the wastewater. *Mid–America Energy Resources,* 681 N.E.2d at 263; *see also Jackson Excavating Co. v. Administrative Hearing Comm'n,* 646 S.W.2d 48 (Mo.1983) (water purification results in substantial transformation of water). Before the removal of the solids, the wastewater is unable to be legally discharged into the White River; after the sludge removal, the wastewater is able to be legally discharged in the White River.

■ However, the fact that WREP substantially changes the wastewater does not ispo facto lead to the conclusion that production for purposes of the exemption provisions is taking place. *See Indianapolis Fruit Co.,* 691 N.E.2d at 1385 n. 4; *Rotation Prods.,* 690 N.E.2d at 804 n. 16. Production, within the context of the exemption provisions at issue, "is defined broadly and focuses on the creation of a marketable good." *Indianapolis Fruit Co.,* 691 N.E.2d at 1383 (quoting *Mid–America Energy Resources,* 681 N.E.2d at 262) (internal quotation marks omitted). In this case, the "products" of the wastewater treatment process (clean water, ash, and sludge) are not sold to others. The clean water is discharged into the White River, and the ash and sludge are disposed of in a landfill. WREP has designated evidence tending to show that it is attempting to market these "products," but it has not shown that it actually sold any of them. WREP contends that this fact is not fatal to its exemption claim.

In *Mumma Bros. Drilling Co. v. Department of State Revenue,* 411 N.E.2d 676 (Ind. Ct.App.1980), the court dealt with an issue similar to that raised here.[2] In *Mumma Bros.,* the court evaluated a taxpayer's sales and use tax exemption claim under a previous exemption provision.[3] In that case, the taxpayer drilled water wells and installed pumps and plumbing for residences, farms and commercial entities in order to provide water for animal and human consumption. The taxpayer claimed that its drilling equipment was exempt from sales and use tax because it was used in the extraction of tangible personal property, namely water.

The court disagreed. It found that because the evidence showed that the extracted water was not resold, the taxpayer did not qualify for the exemption. *Id.* at 677. *See also generally,* Annotation, *What Constitutes*

2. At oral argument, the Department discussed *Faris Mailing, Inc. v. Department of State Revenue,* 512 N.E.2d 480 (Ind. Tax Ct.1987) and its applicability to the case at bar. In *Faris Mailing,* this Court dealt with a taxpayer's claim that it was entitled to an exemption under IND.CODE ANN § 6–2.5–5–6 (West 1989) (amended 1989). This Court stated, "To satisfy the statute, at least in part, there must be some final product which the purchaser offers for sale in his business." *Faris Mailing,* 512 N.E.2d at 483. This language would seem to be dispositive. However, a careful examination of the facts in *Faris Mailing* reveal that *Faris Mailing* is factually dissimilar to the case at bar.

*Faris Mailing* involved a taxpayer's claim that it was producing something rather than providing a service. In that case, there was a sale—the question was whether the sale was a service or a product. In this case, there is no sale, and the service/product distinction is not at issue. There is no question that WREP "produces" clean water, sludge, and ash. Instead, the question is whether the fact that WREP's "products" are not sold means that WREP is not engaged in production for purposes of the exemptions at issue in this case. Accordingly, *Faris Mailing* is not helpful to the analysis of this case.

3. IND.CODE § 6–2–1–39(b)(6) (1976) (repealed 1981).

*Manufacturing and Who is a Manufacturer under Tax Laws,* 17 A.L.R.3D 7, 31–32 (1968 & Supp.1997). In arriving at its conclusion, the court found that the nature and reason for the exemption did not support the granting of the exemption in that case.[4] *Mumma Bros.,* 411 N.E.2d at 678. The legislature enacted the sales and use tax exemption in order to prevent tax pyramiding, i.e., a situation where a tax is levied upon a tax. *Id.* (quoting *Welsh v. Sells,* 244 Ind. 423, 434–35, 192 N.E.2d 753, 759–60 (1963)). *See also Rotation Prods.,* 690 N.E.2d at 798 n. 6. In *Mumma Bros.,* a situation where the "product," i.e., the extracted water, was not resold, there was no tax pyramiding to prevent. Accordingly, the purposes of the exemption were not served. In light of this and the fact that a tax exemption is strictly construed, the court found that "the exemption was [not] meant to apply to the extraction of water for personal ... use." *Mumma Bros.,* 411 N.E.2d at 678.

 This Court finds the reasoning of *Mumma Bros.* persuasive. Although the existence or non-existence of tax pyramiding is not dispositive of whether a sales and use tax exemption exists, it is certainly an important factor in determining whether the legislature intended an exemption to apply to a certain activity. *See Rotation Prods.,* 690 N.E.2d at 805. Where something is made, but not sold, the danger of tax pyramiding does not exist. *Cf. Appeal of Clayton–Marcus Co.,* 286 N.C. 215, 210 S.E.2d 199, 205 (1974) (court should not press definition of manufactured to extreme so as to include persons who do not sell their products).

In this case, the danger of tax pyramiding does not exist. Although the sales and use taxes levied on WREP's purchases of chemicals and other materials increase the cost of its wastewater treatment process, the imposition of those taxes does not result in a situation where the tax of the sale of a product is increased by previous taxes on that product's inputs. *See Rotation Prods.,* 690 N.E.2d at 798 n. 6. The tax merely increases WREP's cost of doing business, as all taxes do.

Despite the possibility that the clean water, ash, and sludge created by WREP's waste treatment process may be sold in the future, the fact remains that those byproducts are not sold in the present. Accordingly, they remain the byproducts of a useful service, not goods for the marketplace. *See Cave Stone,* 457 N.E.2d at 524 (production encompasses all activity directed to increasing the number of scarce economic goods, i.e., goods to be sold in the marketplace). Additionally, the possibility of sales in the future does nothing to demonstrate the existence of tax pyramiding in the present.

It is impossible to conclude that the legislature intended the exemption provisions to apply to the facts of this case.[5] WREP is in the business of treating wastewater, not producing goods for the marketplace. It is possible to state that in the course of its wastewater treatment process, WREP "produces" clean water, ash, and sludge. However, these are byproducts of the wastewater treatment process, and this is not the type of production the legislature had in mind when enacting the exemption provisions because the "products" of WREP's wastewater treatment process do not satisfy any market, and there is no tax pyramiding to prevent.

 In arriving at this conclusion, the Court notes that WREP's waste treatment process serves a very important public interest. This interest would be promoted by granting an exemption in this case because the sales and use taxes at issue in this case make WREP's waste treatment process more expensive. In other words, the imposition of sales and use taxes increases the cost of this beneficial activity. However, this court may not grant exemptions simply because it may think that doing so would be sound public policy. *See Rotation Prods.,* 690 N.E.2d at 798 (court may not grant an exemption in the absence of statutory authority). Such judgments are left to the legislature. *See Mechanics Laundry,* 650 N.E.2d at 1230 n. 11; *Area Interstate Trucking, Inc. v. Depart-*

---

4. Another basis for the decision could have been the fact that the taxpayer claiming the exemption was not the one extracting the water. *See Indiana Waste Sys. v. Department of State Revenue,* 633 N.E.2d 359, 363 (Ind. Tax Ct.1994).

5. In its decision, the Court expresses no view concerning the propriety of granting a sales and use tax exemption where the taxpayer actually sells the byproducts produced in the course of the taxpayer's business. That decision will be left for another day.

*ment of State Revenue,* 605 N.E.2d 272, 278 (Ind. Tax Ct.1992).

## CONCLUSION

In order to qualify for the exemptions, WREP must demonstrate, at a minimum, that it produces goods. Construing all the evidence designated to the Court in favor of WREP shows that WREP cannot satisfy this requirement. Consequently, there is no genuine issue of material fact justifying a trial. Therefore, the Department is entitled to judgment as a matter of law. Accordingly, this Court DENIES WREP's motion for summary judgment and GRANTS the Department's motion for summary judgment.