**Juan C. and Marcia N. GARCIA, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 71T10–9809–TA–104.

Tax Court of Indiana.

Feb. 14, 2001.

---

Timothy D. Hernly, John C. Smarrella, Barnes & Thornburg, South Bend, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

1. In *Garcia I,* the Court found that the State Board's determination of an "A + 4" grade for the Enclosure was an abuse of discretion and

**FISHER, J.**

The petitioners, Juan and Marcia Garcia (Garcias), appeal the final determination of the State Board of Tax Commissioners (State Board) for the 1993 tax year. In their original tax appeal, the Garcias raise several issues, which the Court condenses and restates as:

1. Whether the grade of "A + 6" given to the Garcias' residence was arbitrary and capricious; and

2. Whether the State Board acted arbitrarily and capriciously when it failed to assess the Garcias' swimming pool enclosure (Enclosure).

For the reasons explained below, the Court finds for the Garcias on both issues.

## FACTS AND PROCEDURAL HISTORY

The present case returns to this Court following a remand ordered by the Court on April 24, 1998. *Garcia v. State Bd. of Tax Comm'rs,* 694 N.E.2d 794, 800 (Ind. Tax Ct.1998) (*Garcia I* ). The facts in this case have been stated once before in *Garcia I,* so the Court will not repeat them in their entirety here. *Id.* at 795. Rather, the Court will relate the events subsequent to *Garcia I.* Following the Court's decision, the State Board held a remand hearing on June 22, 1998, after which it issued its final determination on July 22, 1998. (Joint Ex. 50.) In its final determination, the State Board increased the grade of the Garcias' residence from an "A + 4" to an "A + 6," but did not issue a determination concerning the Garcias' Enclosure.[1] The Garcias' subsequently filed their original tax appeal on September 1, 1998, and the Court held a trial in this matter on May 3, 1999. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

The State Board is given great deference when it acts within the scope

remanded that issue for further consideration. *Garcia,* 694 N.E.2d at 799.

of its authority. *Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 801 (Ind. Tax Ct.1998), *reh'g denied.* Accordingly, this Court reverses State Board final determinations only when those determinations are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* at 801. To prevail, a taxpayer can demonstrate the inaccuracy of the State Board's assessment. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233–34 (Ind. Tax Ct.1998).

## Discussion

### I. *Grade*

▆▆▆ The Garcias first argue that the grade of "A+6" given to their residence following their remand hearing was arbitrary and capricious, while the State Board contends that the grade was justified. When contesting the grade assigned an improvement, a taxpayer must offer probative evidence proving the inaccuracy of the State Board's assessment. *Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 400 (Ind. Tax Ct.2000). In the alternative, a taxpayer may also offer a competing view, along with evidence to support that view, of what an assessment should be. *Rinker Boat Co. v. State Bd. of Tax Comm'rs*, 722 N.E.2d 919, 924 (Ind. Tax Ct.1999). In Indiana, administrative decisions must be in accord with previously stated, ascertainable standards. *Mechanics Laundry v. Department of State Revenue*, 650 N.E.2d 1223, 1233 (Ind. Tax Ct.1995). The purpose of the "ascertainable standards" rule "[i]s to make certain that administrative decisions are fair, orderly and consistent, rather than irrational and arbitrary." *Id.* (internal quotations omitted). The ascertainable standards rule is satisfied, at least in part, when standards are written with sufficient precision to give fair warning as to what factors an agency will consider in making an administrative decision. *Id.* The standards should [also] be readily available to those having potential contact with the administrative body. *Id.*

Each grade above an "A" represents a 20% increase in an improvement's value above the grade below it. IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (codified in present form as *id.*, r. 2.2–7–6(g)(4) (1996)). Therefore, a grade of "A +1" represents a factor of 180%, while a grade of "A +10" represents a factor of 360%. *Id.* "A" grade dwellings have an "outstanding architectural style and design and ... are constructed with the finest quality materials and workmanship throughout." IND. ADMIN. CODE tit. 50, r. 2.1–3–2 (1992) (codified in present form at *id.*, r. 2.2–7–6 (1996)); *Garcia I*, 694 N.E.2d at 796.

The State Board based its decision on a series of calculations,[2] whereby the State Board started with the actual construction cost of the Garcias' home, which equaled $1,634,543.[3] (Joint Ex. 50 at 7); (Trial Tr. at 8.) From that figure, the State Board then subtracted items that were separately assessed, such as a tool shed and tennis pavilion. (Joint Ex. 50 at 8.) The resulting figure equaled $918,677. (Joint Ex. 50 at 8); (Trial Tr. at 8.) The State Board then determined that the tax year in question was governed by the 1989 regulations concerning grade, which were based on 1985 reproduction costs. (Joint Ex. 50 at 8); (Trial Tr. at 9.) Therefore, the State Board decided that it needed to equate the 1991 construction costs with the 1985 data that the 1989 regulations relied upon. (Joint Ex. 50 at 8); (Trial Tr. at 9.) To do so, the State Board discounted the 1991 construction costs by a consumer price index deflator[4] to arrive at a 1985 cost of $741,005[5]

2. The State Board does not dispute these calculations and resulting figures.

3. The Garcias' home was built in 1991. (Trial Tr. at 8.)

4. BLACK'S LAW DICTIONARY 312 (7th ed.1999) defines "consumer price index" as an index

that is published monthly by the U.S. Bureau of Labor Statistics that tracks the price of goods and services purchased by the average consumer. In this case, the State Board used a deflator factor of .8066. (Joint Ex. 50 at 9.)

5. Some of the State Board's calculations erroneously list this figure as $714,005. (Joint

for the Garcias' home. (Joint Ex. 50 at 8); (Trial Tr. at 9.); *see also Town of St. John v. State Board of Tax Comm'rs*, 665 N.E.2d 965, 967 n. 5 (Ind. Tax Ct.1996) (subsequent history omitted) (stating that the cost schedules for 1989 were based on 1985 reproduction costs deflated by 15%). The State Board then multiplied $741,005 by the inverse of 15% or 85%[6] to reach the figure of $629,854. (Joint Ex. 50 at 8.) To the State Board, this figure represented the adjusted construction cost of the Garcias' home. (Trial Tr. at 9.)

Finally, the State Board determined that under the 1989 regulations, a grade of "C" on the Garcias' home would equal $217,900. (Trial Tr. at 9.) To achieve the final grade of "A+6," the State Board divided $629,854 by $217,900, which equaled approximately 289%, which was then rounded down to 280% or "A+6" for the 1993 tax year. (Joint Ex. 50 at 8); (Trial Tr. at 9–10); IND. ADMIN. CODE tit. 50, r. 2.1–4–3.

Despite the State Board's best efforts, no support exists in the regulations for the above calculation. The State Board admits in its final determination that its calculation cannot be supported. (Joint Ex. 50 at 8) ("The State Board grants that the Manual does not explicitly identify the mathematical calculation detailed above.") At trial, the State Board again stated that it could not support its calculations. (Trial Tr. at 29–30) ("Well, what they did ... is they backed into the grade.") Further,

the State Board, when questioned by the Court, could not point to any foundation outside the regulations with which to support its calculations. (Trial Tr. at 35–36.)

In addition, the Court is surprised by the State Board's use of actual construction cost in determining its calculations. This Court has stated on several occasions, usually at the State Board's behest, that in Indiana actual construction costs generally may not be used when assessing property.[7] *See Dawkins v. State Bd. of Tax Comm'rs*, 659 N.E.2d 706, 709 (Ind. Tax Ct.1995) ("Under the assessment law ... the term reproduction cost ... does not refer to the actual cost of constructing an improvement. It means the cost of the property as calculated through application of the State Board's rules, regulations and cost schedules."); *Barker v. State Bd. of Tax Comm'rs*, 712 N.E.2d 563, 572 (Ind. Tax Ct.1999); *Sterling Mgmt.—Orchard Ridge Apartments v. State Bd. of Tax Comm'rs*, 730 N.E.2d 828, 835 n. 4 (Ind. Tax Ct.2000). In Indiana, a property's assessment is based on its true tax value, which is calculated by taking the reproduction cost of property and subtracting depreciation, as provided for in the State Board's regulations. IND. ADMIN. CODE tit. 50, r. 2.1–3–4 (1992)(codified in present form at *id.*, r. 2.2–7–10(e) (1996)); *GTE North Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 886 (Ind. Tax Ct.1994).

Also, in *Garcia I*, this Court stated that the regulations offered no guidance as to

---

Ex. 50 at 8.) This error did not compromise the final determination, however, since the correct figure of $741,005 is used in the final set of calculations. (Joint Ex. 50 at 8.)

6. The 1991 cost schedules found in the regulations are the 1985 cost schedules reduced by 15%. In order to achieve the proper comparison for its grade calculation, the State Board took the above-deflated construction costs and deflated them an additional 15%, for a multiplication factor of 85% or .85, which was then used to compute the adjusted 1991 costs. (Joint Ex. 50 at 9.)

7. The Court acknowledges that the State Board's method of calculating grade in this case does make some sense. However, if the State Board wishes to use such a method when dealing with future appeals (assuming such a method is actually relevant to grade), it must be included in the regulations. *Cf. Inland Steel Co. v. State Bd. of Tax Comm'rs*, 729 N.E.2d 201, 203 (Ind. Tax Ct.2000), petition for review filed Dec. 22, 2000 (Court did not allow for the use of engineering costs in determining grade because no support existed

any grade above an "A." *See Garcia*, 694 N.E.2d at 798 ("Although the State Board's regulations offer some guidance regarding characteristics of the basic grades ... there are absolutely no definitions or guidelines that allow ... this Court ... to differentiate between an 'A+10' or an 'A' grade dwelling."). Without such guidance, the State Board abused its discretion when it assessed the Garcias' home as an "A+6." Therefore, this issue must once again be remanded. Since neither the regulations nor generally accepted appraisal standards provide for setting a grade above an "A," the State Board is directed to enter a grade of "A" on the Garcias' home for the 1993 tax year.[8]

## II. *Swimming Pool Enclosure*

The Garcias next argue that the State Board acted arbitrarily and capriciously when it failed to assess their Enclosure on remand. In *Garcia I*, the Court noted that the State Board originally had given the Enclosure a grade of "A+4." *Garcia*, 694 N.E.2d at 798.[9] In remanding this issue, the Court noted that:

In this case, some of the cost schedules ... *expressly* require the use of grade factors ... However, the schedule for pool enclosures contains no such instruc-

in the regulations for their use.) *transfer pending*.

8. The Court has permitted the introduction of generally accepted appraisal techniques in cases where the regulations are silent. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1244 n. 18 (Ind. Tax Ct.1994) (Using generally accepted appraisal techniques is acceptable for quantifying obsolescence in the absence of specific regulatory guidance); *see also Canal Square Ltd. Partnership v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 810 n. 8. (Ind. Tax Ct.1994) ("A market value estimate is appropriate in the context of obsolescence.") Upon a proper showing, such might be appropriate in establishing grade. Also, in any mass appraisal system, invariably, certain properties are over-assessed and some are under-assessed. *King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 340 n. 4

tion.... The regulations do not expressly provide that a grade factor is to be applied when using the cost schedule for pool enclosures.... This leads to the conclusion that the regulations were drafted with the intent to specifically delineate which cost schedules required the application of a grade factor.

*Id.* at 799–800 (emphasis in original).

In *Garcia I*, the Court instructed the State Board on remand that, rather than assigning a grade to the Enclosure, the State Board should instead extrapolate the value of the Enclosure from Schedule G.1 and then reassess it based on that extrapolation. *Garcia*, 694 N.E.2d at 799. Instead, the State Board did nothing. At trial, the State Board asked this Court for a remand on this issue. (Trial Tr. at 24, 44.) ("As far as the swimming pool is concerned ... [the State Board] would take a remand on the swimming pool.") This request will be granted.

## CONCLUSION

The Court finds that the State Board acted contrary to law when it graded the Garcias' home as an "A+6" for the 1993 tax year. The State Board is directed to enter a grade of "A" on the Garcias' home for the 1993 tax year. Further, the Enclosure issue is remanded to the State Board with instructions to follow the Court's orig-

(Ind. Tax Ct.1998). In most states, these inevitable flaws in the mass appraisal techniques are corrected through the presentation of evidence of actual value during the appeal process. *Id.* However, in Indiana, such is not the case. *See State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1040 (Ind.1998) (noting that "[b]ecause the existing system precludes evidence of any value which is not found in the cost schedules ... assessors are prevented from considering other relevant evidence of property wealth.") Despite this, a taxpayer is entitled to a fair application of the regulations.

9. The Court notes, as it did in *Garcia I*, 694 N.E.2d at 798, that the correct schedule for valuing swimming pool enclosures is Schedule G.1, which appears at IND. ADMIN CODE tit. 50, r. 2.1-3-5 (1992) (codified in present form at *id.*, r. 2.2-9-6 (1996)).

inal instructions in *Garcia I.* Accordingly, the Court now REVERSES the State Board's final determinations and RE-MANDS this case to the State Board for further proceedings consistent with this opinion.